The Augusta and Savannah Railroad Co., vs. McElmurry.

The Augusta and Savannah Railroad Company, plaintiff in error, vs. James R. McElmurry, defendant in error.

[1.] If in a proceeding against a Railroad Company, it is alleged that the injury complained of was committed on a different day from that shown by the proof, the variance is not fatal.

[2. and 3.] The law requiring blow posts to be erected by Railroads, at the distance of two hundred yards from crossings, signals to be given of the approach of trains, &c., may be looked to, as indicative of the Legislative mind, as to the subject of diligence, in suits against the company for civil injuries.

[4.] A plaintiff may recover of a Railroad Company for an injury done to his person or property, although not without fault himself, provided the mischief was the result of gross negligence on the part of the company, and could have been avoided by the exercise of ordinary care.

[5.] All judgments are presumed legal until the contrary is shown, and the burden is upon the plaintiff in error to make out affirmatively that the decision complained of is erroneous. And he must embody in his bill of exceptions, enough of the testimony to satisfy the reviewing Court that he is entitled to the charges requested, not as abstract propositions, but as the law of the case upon the facts proven; and failing to do this, he must suffer the consequences.

[6.] It is not unqualifiedly true, that no particular speed is required by law of Railroads. The train must be so checked as to enable the engineer to stop his machine *at crossings*, to avoid collisions, and it is not incumbent upon the plaintiff to show that the speed was reckless, and that the engineer could not have stopped his train before reaching the crossings: or that he saw the obstruction and heedlessly proceeded.

[7.] The failure of a Railroad train to comply with the requisitions prescribed by law, does not necessarily make a road liable for damages, nevertheless it will be sufficient usually to constitute a *prima facie case*, or want of due diligence.

Assessment of Damages, in Richmond Superior Court. Tried on appeal before Holt, Judge, at October Term, 1857.

Under the provisions of the statute of 1851,-'2, page 108, James R. McElmurry served a written notice on the Augusta and Savannah Railroad Company to appear at the Inferior Court to be held in and for Richmond county, on the Thursday after the first Monday in March, 1756, to show cause why the damages should not be assessed against said compa-

ny for killing a negro woman belonging to plaintiff of the value of one thousand dollars, and *tearing to pieces* and injuring a certain cart of the value of thirty dollars, "by the running of a car, engine or locomotive or other machinery, on said road." The killing and injury were alleged to have been done by said road "on the night of the 4th February, 1856, in the county of Richmond, at or near the place where the common road leading to *Bennock's old mill* crosses the Augusta and Savannah Railroad, the same being nearer to McBean's than to any other station."

By consent of parties, the case was transferred to the appeal docket of the Superior Court of said county.

The case came on for trial on the appeal, at the October Term, 1857, of Richmond Superior Court, Judge HOLT, presiding: After the testimony was closed, and argument by counsel, the defendant requested the Court to charge the jury upon various grounds, all of which the Court refused, save two.

To which refusal to charge, counsel for defendant excepted, and assigns error:

1st. Because the Court declined to charge as requested by defendant as follows: "This suit being a proceeding under a special statute, the allegations must conform to the proofs, and, if the jury find that the damage is alleged to have been committed on the 4th, and the proof shows that it was done (if at all) on the 5th of the month, the verdict must be for defendant."

2d. Because the Court declined to charge as requested by defendant as follows: "The act of January 22, 1852, is a penal statute, and is not the measure of the defendant's liabilities or of the plaintiff's rights in this civil suit."

3d. Because the Court declined to charge as requested by defendant as follows: "The civil liability of railroad companies, by the 5th section of said act, remains as before its passage, and is not affected by the act."

4th. Because the Court declined to charge as requested by defendant as follows : " In an action against a Railroad Company to recover damages for injuries sustained in consequence of the negligent running of rail-road cars, in order to warrant a recovery by plaintiff, it must appear that the defendant's agents were guilty of negligence, and that the plaintiff, himself, and his servant, were free from negligence or fault ;" and further, "it is necessary for the plaintiff to establish the proposition, that he himself and his servant were without negligence and without fault."

5th. Because the Court declined to charge as requested by defendant as follows : " The engineer was not bound to hold up his engine, provided he might have stopped the machine between the blowing post and crossing."

6th. Because the Court declined to charge as requested by defendant as follows : " No particular speed is prescribed by law, and the defendants are not liable unless the speed is shown to have been reckless ; and it is necessary for plaintiff to show, before he can recover, that the engineer could not have stopped his engine before reaching the crossing, or that he saw the obstruction and heedlessly proceeded."

7th. Because the Court declined to charge as requested by defendant as follows : " The failure to blow the whistle, to check the speed, or to erect sign boards, does not necessarily make a road liable for damages done on the road," and charged the same to be a want of due diligence by the defendant.

The charge of the Court on the fourth point was briefly this : that defendants are bound for reasonable care and diligence in running their cars, and a departure from the rules of running prescribed by law is a want of such care and diligence ;—that when the plaintiff is chiefly in fault he cannot maintain an action ; where the parties are equally in fault, he cannot maintain an action ; but that though the

plaintiff be somewhat in fault, yet, if the defendants have been guilty of gross negligence, he may maintain an action.

WM. W. HOLT, *Judge.*

Dec. 3d, 1857.

MILLERS & JACKSON, for plaintiff in error.

WALKER & RODGERS, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in refusing to charge the jury, that if the injury was alleged to have been committed on the 4th day of the month, and the proof showed that it was done on the 5th, that the verdict must be for the defendant?

It is argued that this being a summary proceeding, and in derogation of the common law, should be construed strictly. Acts relative to railroads cannot be in derogation of the common law, for railroads were unknown to the common law; and the principles of the common law applicable to ordinary public roads and vehicles, would not apply to steam engines with their tremendous speed and power. Jones's Forms is a great innovation upon the common law, and yet being intended to advance the remedy, are liberally construed. Railroad acts, we apprehend should not be construed more strictly than penal statutes, and no such rule as to the time laid in the indictment is observed in criminal proceedings.

The act itself evidently contemplates some latitude in this respect. The notice given is to contain a statement of the *time* and place of the injury, "as near as can be ascertained;" but it is not required that it should set forth precisely *when* and where the damage was perpetrated. *Pamphlet Laws,* 1853-'4, *p.* 93.

[2. and 3.] As to the 2d request, it is not pretended that the Act of 22d January, 1852, is the measure of the defendant's liability or of the plaintiff's rights in a civil suit. We

do not know that we correctly apprehend the meaning of the terms in which this request was made. We do not suppose, that because this act imposed a fine of $1,000 upon one officer and of $500 upon another for violating its provisions, that therefore $1,000 or $500 was the measure of damages for the destruction of property regardless of its real value. The word *measure*, was not used with etymological accuracy. It was simply meant to affirm by the 2d and 3d, that the act had nothing to do with the civil liability of the company.

If we are right in this construction, then we must dissent from the proposition. The Act certainly has *something* to do with the matter. In requiring blow posts to be erected at the distance of two hundred yards from the crossings and signal to be given, of the approach of the train, and to check the speed of the engine, so as to put it in the power of the engineer to stop entirely, to prevent collision at the crossings, and making it penal to omit these duties, the Legislature intended to indicate in unmistakeable language the views it entertained upon the subject of negligence, as to this particular class of injuries. Hence the remark which fell from this Court, through kindness to railroads, in a former opinion, that they would do well to look to these provisions of the law. A failure to do so, and damage resulting therefrom, would, to say the least of it, make out a *prima facie* case against the company. We suppose that the declaration in the 5th section of the act, that the civil liability of the company remained as before its passage, was intended merely to negative the inference, that this civil liability was discharged in consequence of the penalties imposed by the act. In other words, to rebut the presumption that the civil injury was merged in the crime.

[4.] According to the previous adjudications of this Court in 18th and 19th *Georgia Reports*, in which the Macon and Western Railroad Company was defendant, this 4th re-

quest does not state the law correctly. It is not necessary to enable the plaintiff to recover, to show, that he is without fault. On the contrary, the learned Judge has stated the rule correctly, one enunciated by this Court after much deliberation, and one which approximates perhaps, as near to accuracy as is possible in such cases. It is this, that although the plaintiff be somewhat in fault, yet if the defendant be grossly negligent, and thereby occasioned or did not prevent the mischief, the action may be maintained.

[5.] The next assignment of error is, that the Court declined to charge the jury when requested, that the engineer was not bound to hold up his engine provided he might have stopped the machine between the blowing post and crossing. As to this request, we have this to say, that while it may be true in the extreme case put by the learned counsel, that if the train be merely dragging along at a snails pace, it may not be necessary further to check its speed, still unless the proof showed that such was the fact in this case, we are not authorized to reverse the judgment. The state of things conjectured, is neither more nor less, than that exacted by the statute. To be moving at the rate of fifty yards an hour, is to check the engine, so as to have it completely under the control of the engineer. And that is all the law demands. All judgments are presumed legal until the contrary appears: and the burden is upon the plaintiff in error, to show affirmatively that the decision complained of is erroneous, and he must embody in his bill of exceptions, enough of the testimony to satisfy the reviewing Court, that he was entitled to the charge asked, not as an abstract proposition, but as the law applicable to the actual proof in the case. Failing to do this, he must suffer the consequences.

[6.] We take issue with the able counsel, as to the law of case as set forth in the sixth request to charge. A particular speed *is required*, at or near the crossings. The train must be so checked as to enable the engineer to stop his machine

The Augusta and Savannah Railroad Co. vs. McElmurry.

at crossings. And it is not incumbent upon the plaintiff to prove, that the speed was reckless, and that the engineer could not have stopped the train before reaching the crossing: or, that he saw the obstruction and heedlessly proceeded. Suppose the contrary of all this be true; still if the signal was not given at the distance of two hundred yards to put the other party on their guard, the company might be made liable. And in addition to this, we have the same reply to make as to the proof, that we did under the 5th assignment, and that is, that the circumstances of the case did not justify this request.

[7.] And so of the last request. While it may be conceded, that the failure of the train to comply with the duties prescribed by the statute, does not necessarily make a road liable for damages, still it will constitute a *prima facie* case, and usually will be sufficient to establish a want of due diligence.

No new trial was applied for in this case; and therefore under the Act of 1853, 1854, as interpreted by this Court, any misdirection does not *per se* entitle the party cast to a new trial. It may be, that the evidence entitled the party to the charges requested, still if no injury resulted from the refusal of the Court to give them, or substantial justice was done, we have not felt constrained to grant a new trial, unless a motion was made for that purpose and refused in the Court below.

Judgment affirmed.