HENRY STEILER v. EDWARD J. HART AND WILLIAM H ROBINSON.

*Negligence—Master and servant—Evidence—Injury to infant.*

1. On the trial of a suit to recover damages for injuries sustained by a boy while operating a machine in defendants' factory, plaintiff was permitted to testify that such emplyment "made him dizzy," and to prove by another boy, who took the machine after plaintiff's injury, that the same effect was produced on him. The declaration did not set forth any such complaint, nor suggest it as the producing cause of the accident.

   *Held,* that the court erred in the admission of the testimony.

2. If in such a case it appears that the machine was a perilous one, and that, in view of such fact, the boy was too young to understand its dangerous character, or appreciate the danger to him in operating it, defendants would not be shielded from liability by proof that proper instructions were given to the plaintiff so that he understood the use of the machine; but if, on the contrary, the boy was of that age and maturity of judgment that he fully understood and realized the danger to which he was exposed, of which he was fully informed, and instructed in the use of the machine so as to avoid being injured, and the defendants kept it in proper repair and fit for use, they would not be liable; and these were questions for the jury.

Error to superior court of Detroit. (Chipman, J.) Argued April 12, 1887. Decided April 28, 1887.

Case. Defendants bring error. Reversed. The facts are stated in the opinion.

*Moore & Moore,* for appellants.

*Stewart & Galloway,* for plaintiff.

CHAMPLIN, J. Plaintiff recovered judgment in the superior court of Detroit in an action of trespass on the case, based upon the negligence of defendants.

The declaration alleges that on the twenty-fourth day of

September, A. D. 1883, plaintiff was in the employment of defendants, straightening the "temples" of spectacles at a large machine, namely, a press run by steam-power; the plaintiff being at such time but a young boy, to wit, 13 years of age, and incapable of sufficiently realizing the danger he was undergoing in working around such machinery. It then alleges that the press was so constructed that a short covered shaft at the upper portion of the press was continually revolving, and only worked the upper plate of the press, when geared, through a treadle for the foot of the operator, namely, when the operator pushed down with his foot upon the treadle, and that the upper plate would cease to move up and down upon the lower stationary plate when the operator's foot should be removed from the treadle; and it became and was the duty of the defendants in the premises to place no one of such tender years as the plaintiff at such perilous task; to provide something suitable for the operator of said press with which to clean off the plates of the same; and it was also the duty of defendants to keep such machine in proper running order, so that the upper plate of the said press would not descend upon the lower plate or standard unless caused so to do by the operator placing his foot upon the treadle or foot-piece.

The breach of duty alleged is the assigning plaintiff, being of such tender years, to such perilous task; neglecting to provide anything with which to clean the plates of the press; neglecting to provide suitable machinery for the task at which the plaintiff was employed, to wit, a machine in which the upper plate would not move up or down unless caused so to do by the operator's pressing upon the treadle; by reason of which breach of duty plaintiff's right hand became crushed and utterly ruined by being caught between the two plates of the press while cleaning the same with his hand, nothing having been provided him with which to clean the same, his foot not being on the treadle or foot-piece at the time, and

the upper plate having come down suddenly upon his hand, then between the two plates, after the upper plate had ceased to move for a long time, and after he had removed his foot from the foot-piece; that, had defendants observed and performed their said duty, the plaintiff would not have been injured, which injury happened without any attending fault or neglect on the part of the plaintiff.

The circuit judge certifies that the substance of all the testimony which was submitted to the jury is returned in the bill of exceptions.

Plaintiff was sworn, and testified in his own behalf. He testified that he was first employed by defendants to punch holes in spectacle temples on a small press, and after about a month he was put to work upon the big press, worked by steam, for straightening temples. He had worked on this press about 60 days, when he received the accident complained of. At this time he was a little over 14 years old. The temples, when straightened, are more or less covered with oil; so that, after using the press awhile, the oil has to be wiped from the stamps. This is done by removing the foot from the treadle, when the press ceases to move, and the oil is then wiped off with some "waste." The space through which the upper die moves is about two and one-half inches, and the number of movements each minute is about 35. The up and down motion is produced by an eccentric revolved by a band communicating with a shaft. The machine is thrown in gear by placing the foot upon the treadle, and pressing down. When the pressure is removed, the machine is thrown out of gear automatically.

Plaintiff testifies that he had wiped the oil from between the dies as often as 25 times a day while he was running the press. When he commenced work, he was instructed in its use. The foreman showed him how to clean, and called his attention to the necessity of stopping the machine before cleaning it, and plaintiff knew it would be improper to clean

the machine while in motion. He knew how to start and stop the machine, and how to perform his work upon it. He testified that he stopped the machine, and was in the act of wiping the oil from between the dies, when it suddenly started, and the die came down and crushed his hand. He was caught and held fast until succored by some one in the shop, who threw off the belt, and the wheel back, which released him, and he did not know and could not tell how the accident happened, any more than that the die came down upon his hand.

No defect was shown in the machine, and both parties were agreed that the press could not be operated without the treadle being pressed down so as to project the clutch from the idler into the band-wheel. To explain how the accident might have happened, the plaintiff produced a machinist of several years' experience, who testified that the upper die being moved by an eccentric, and the weight of the die being 30 pounds or more, if the machine stopped in a certain position, and was not properly oiled, it would be liable to start at any moment; that, if the die happened to be up, the throw of the eccentric at the top past the "dead point," and anywhere on its downward stroke, it would take but a small amount of friction between the pulley and the shaft to carry it down; that this might occur from want of oil, or from oil that was gummy. This witness also testified that proper instruction in the use of the machine would include caution to the boy as to the places where the machine, when stopped, would have a natural tendency to move from friction.

On the other hand, the defendants introduced evidence tending strongly to prove that the pressure upon the treadle had not been removed, and that the plaintiff was either carelessly passing his hands between the dies, or cleaning it while in motion; that, when his hand was caught, the belt that ran the press was slipping upon the pulley, which all the witnesses agree could not be done from mere friction, and in

order to extricate him it was necessary to throw off the belt and turn back the wheel. There was a conflict of testimony in the case, which it was the province of the jury to pass upon.

The first and fifth assignments of error may be considered together. The plaintiff, when being examined as a witness in his own behalf, was asked by his attorney this question:

"After you had worked on the machine some little time, what effect would it have upon you?"

Defendants' counsel objected to the question as incompetent and immaterial, and especially so unless the facts were communicated to the defendants. The court said:

"If you can show what was the effect upon any one, you may do so. Anything that is peculiar to the boy you cannot show."

The witness then answered:

"It would make me dizzy, and I could not work on it."

The court then said:

"Understand, you are to follow that up with testimony that that would be the natural effect upon anybody."

Afterwards the plaintiff produced as a witness Jacob Lorensus, who testified that he was 16 years old, and that he worked on the machine after plaintiff left. He was then asked:

"Did working on the machine make you feel dizzy?"

Defendants' counsel objected, on the ground of immateriality, which was overruled, and the witness answered:

"Yes, sir."

The court erred in admitting this testimony. No complaint of this kind is set forth in the declaration, and the effect produced upon the plaintiff is not suggested to have had any relation to the accident as the producing cause. It did not tend to prove the perilous nature of the machine, but

rather to show that it incapacitated the witness to work upon it, and no claim is made that defendants were notified of the fact that plaintiff was made dizzy by working on the machine, and fell far short of showing that the natural effect of the machine was to make any one dizzy who worked upon it. The testimony may have influenced the jury, and led them to infer that it was imprudent for defendants to put plaintiff to work upon a machine that had such a deleterious effect upon him, or to continue him in that employment. There was no allegation in the declaration which would authorize the introduction of this testimony.

The second and third assignments of error were not pressed upon the argument, or in the brief of counsel. The fourth assignment is based upon a question which was not answered by the witness responsively, and was not harmful to defendants.

There were four requests to charge, as follows:

"1. Under the testimony, the verdict must be for the defendants.

"2. The defendants had a right to use the machine in question.

"3. If the plaintiff was properly instructed in and understood the use of the machine, he cannot recover.

"4. The testimony and the declaration do not correspond, and therefore the verdict must be for the defendants."

The first request was properly refused. There was testimony bearing upon the essential point relied on for a recovery, from which the jury might find the negligence of defendants, and proper care on the part of the plaintiff, and in such case it would have been error to have directed a verdict for the defendants.

The second request was not discussed, and need not be noticed. It was not an issue in the case.

The third request, standing alone and disconnected from the claim upon which liability was based in the case, was properly refused. The plaintiff's claim was—

1. That it was a perilous machine.

2. That, in view of this fact, the plaintiff was too young and too tender in years, or, in other words, immature, to understand the perilous character of the machine, or appreciate the danger to him in operating it; and that these two facts in themselves constituted actionable negligence in defendants in putting plaintiff to work upon the machine.

If these two facts were established by the testimony, it would not shield the defendants from liability, if they did give plaintiff proper instructions so that he understood the use of the machine. But if it was a perilous or dangerous machine to operate, yet if the lad was of that age and maturity of judgment that he fully understood and realized the danger, and the consequences of his own negligence or carelessness in operating the machine, and was fully informed of such danger, and instructed in its use so as to avoid being injured, and there was no fault of defendants in keeping the machine in proper repair and fit for use, the plaintiff could not recover. It was a question for the jury, under the testimony, to determine whether the plaintiff was possessed of that degree of judgment and capacity which justified the defendants in putting him in charge of and working upon the machine which caused the injury. This involved the perilous nature of the machine and the capacity of the boy, and these questions were properly submitted to the jury under the charge of the court.

The court further instructed the jury as follows:

"If you find this machine to be perilous, the next question is, what instructions did the boy receive? Was he instructed by the foreman as to what he should do? Did he have that information given to him which, by reason of his youth and his incapacity, ought to have been given to him, so that he would know what the danger was, and so avoid it? Another question arises as to whether he had the proper implement with which to clean the machine. Was that furnished to him? And was he instructed that it should be cleaned with an implement which was proper? If the boy was of that tender age and that lack of capacity that he could not be held exactly to that accountability which a person of more mature years would be held to, then the failure

to furnish him with those appliances which are safe and proper, and the failure to instruct him as to the use of them, would be negligent upon the part of his employers. That is the case before you.

"You have heard his testimony. You have heard the testimony of the defendants. They claim that they gave him every instruction, and their witnesses describe the machine, and tell what instructions they did give him. It is for you to determine whether they acted prudently, considering his age and his probable capacity,—whether, under the circumstances, they acted with due regard to the safety of the boy. If you find that they did act with prudence and with due regard, that ends the case, and you will bring in a verdict for the defendants. But if you find that they did not act, under the rules which I have laid down to you, with due regard to their duty to this lad under all the circumstances, then you will ascertain what damages— what compensation—shall be made for the injury."

Exception was taken to the last sentence above quoted, and error was assigned thereon, but it was not insisted upon on the argument, and no mention is made of it in the brief of counsel. The charge is unexceptionable, and submitted the issues fairly to the jury, under proper instructions as to the law applicable to the facts as they should find them.

For the errors noted above in the admission of testimony, the judgment must be reversed, and a new trial granted.

The other Justices concurred.