ALFRED WILLIAMSON, ADMR.,

v.

SHELDON MARBLE CO.

GENERAL TERM, 1893.

*Master and servant.   Assumption of obvious risk.   Where servant is young or inexperienced.*

1.  A master may conduct his business in a dangerous way, provided it be not unlawful and does not interfere with the rights of others, without liability to his servant, who has sufficient capacity to comprehend the danger and voluntarily incurs it.

2.  The hazard in passing along a ledge of rock projecting some ten inches from the perpendicular face of a marble quarry, covered with ice in freezing weather, as the servant knows, is sufficiently obvious so that if a servant attempts to pass over it in the discharge of his duties he must be held to have assumed the risk.

3.  A master, having knowledge of the danger, should instruct

his servant, who from lack of years, experience, or capacity does not comprehend it, and for failure to do so may be liable, even though the servant consents to incur the hazard ; but the plaintiff has the burden of showing both the necessity for the instruction and the failure to give it.

4.  A master may still be liable, although he has instructed the servant, if the servant be so young and inexperienced that he cannot comprehend and guard against the peril ; but it cannot be assumed that a boy fifteen years and nine months old, who is receiving one dollar and fifteen cents a day, has not sufficient intelligence to understand the danger of walking along a slippery ledge of rock.

Action for the death of the plaintiff's son, alleged to have been caused by the negligence of the defendant. Plea, the general issue. Trial by jury at the September term, 1892, Rutland county, TAFT, J., presiding. At the close of the plaintiff's case the court directed a verdict for the defendant. The plaintiff excepts.

The evidence of the plaintiff tended to show the following facts :

The plaintiff's intestate at the time of his death was fifteen years and nine months of age and was engaged as a hired servant in the employ of the defendant at the rate of one dollar and fifteen cents a day. His duties were those of what was known as a helper in the operation of a stone-cutting machine called a Burley drill; that is, it was his business to assist the one operating the machine as he might direct. The machine was used in the defendant's marble quarry and was driven by compressed air, and there were several other machines upon the same level, driven in the same manner. The air for these machines was brought into the quarry through an iron pipe some three inches in diameter, which ran diagonally from the upper southeast corner of the quarry along the east end, down to the level on which the machines were at work, reaching this level upon the west side of the quarry. Just underneath this pipe and running diagonally in the same direction was a shelf in the rock

extending some ten or twelve inches from the perpendicular wall.   Pipes were taken from this main pipe to the different machines, at different points, and at each point where a pipe led from the main pipe to a machine was placed a valve, so that the air could be cut off at that point.   The air could also be cut off at one or two other points upon the level on which the machines stood.   The water dripped to some extent from the valves onto this ledge, so that in cold weather the ledge was more or less covered with ice, and underneath each one of these valves would be a considerable accumulation of ice.   It also appeared that fires of waste and oil were frequently used to thaw out the pipes when frozen.   At the time of the accident the weather had been cold for some days previous; the ledge was covered with ice, and these fires had been used to a considerable extent for the purpose of thawing out the pipes.

It appeared that for some reason it was customary upon the part of the workmen to shut off the air from these machines at the valve leading from the main pipe and not by using the valves upon the level, and in order to do this it was necessary in some way to reach these valves.   The valve to the machine in question was situated some fifteen or twenty feet above the floor of the quarry, and in order to reach it one could pass onto the ledge upon the west side of the quarry and so up the ledge, gradually ascending to the valve, or he could ascend stairs situated in the southeast corner of the quarry to the level of this projection, and from there descend along the projection to the valve.   The testimony showed that the almost universal custom was to go upon the ledge upon the west side and so up.

Upon the afternoon in question the air for some reason had been shut off at this valve.   About thirty minutes before quitting time one Marchand, the person in charge of the machine and to whom he was acting as helper, directed the intestate to turn on the air.   It was at that time quite dark

upon the floor of the quarry and along the ledge, and Marchand did not see the intestate after he gave him this direction until he found him lying at the foot of the stairs in the southeast corner of the quarry. The intestate then lay there with a pool of blood near his head and the top of his skull fractured. He was unconscious and never regained consciousness, nor did it appear how the accident occurred; but the theory of the plaintiff was, that he had gone up the stairs and onto the ledge for the purpose of passing down to the valve, and while so doing, owing to the unsafe condition of the ledge, had slipped and fallen to the floor of the quarry, a distance at that point of some twenty-five feet.

The evidence tended to show that no other way of reaching the valve was provided by the defendant; that this way was the one habitually used by the workmen, and that the intestate himself had very often been to the valve for the purpose of letting on and shutting off the air.

There was no testimony as to the capacity or intelligence of the intestate, nor did it appear whether the defendant had or had not instructed him as to the danger of passing along this ledge.

*Butler & Moloney* for the plaintiff.

Whether the intestate appreciated the danger of passing along this narrow shelf, and whether, therefore, he assumed it, should have been submitted to the jury. *Wilder* v. *Wheldon*, 56 Vt. 345; Cooley Torts, 553 and note; *Sullivan* v. *India Manufacturing Co.*, 113 Mass. 396; *Penn Rd. Co.* v. *Long*, 15 Eng. & Am. Rd. C. 349; *St. L. I. M. & S. R. A.* v. *Higgins*, 44 Eng. & Am. Rd. C. 545.

The master had no right to put a person of immature years to the performance of a dangerous service without giving him proper instructions. *Rogers* v. *Swanton*, 54 Vt. 592; *Hill* v. *New Haven*, 37 Vt. 501; *Whitcomb* v. *Denis*,

52 Vt. 382 ; *Selinas* v. *State Agc. Soc.*, 60 Vt. 255 ; *Walker*
v. *Westfield*, 39 Vt. 246 ; *Bover* v. *Danville*, 53 Vt. 183 ;
*Latremouille* v. *Bur. & Rut. Rd. Co.*, 63 Vt. 344.

*C. A. Prouty* for the defendant.

The intestate had frequently performed this same service
in the same way and knew perfectly the risk involved.   He
must, therefore, be held to have assumed it.   *Carbine* v.
*Ben. & Rut. Rd. Co.*, 61 Vt. 348 ; *Latremouille* v. *Ben. &
Rut. Rd. Co.*, 63 Vt. 336 ; *Leary* v. *Boston & Albany Rd.
Co.*, 139 Mass. 580 ; *Lovejoy* v. *Boston & Albany Rd. Co.*,
125 Mass. 79 ; *Ladd* v. *New Bedford Rd. Co.*, 119 Mass.
412 ; *DeForest* v. *Jewett*, 88 N. J. 264 ; Shear. & Red.
Neg., s. 185.

ROWELL, J.   Recovery can be had only on the ground
that the death of the intestate was caused by the wrongful
neglect or default of the defendant, for it is not claimed that
it was caused by the wrongful act of the defendant.

Conceding for present purposes that the testimony tends
to show that the intestate was killed by falling from the jog
in the wall, it remains to consider whether it also tends to
show that his death was caused by the neglect of any and
what duty that the defendant owed to him.

Undoubtedly access to the valve might have been made
safer, and probably entirely safe for one exercising due
care.   But a man has a right to carry on a business, dan-
gerous in itself, or dangerous by reason of the way in which
he carries it on, if it is not unlawful and does not interfere
with the right of others.   Hence the defendant had a right
to omit to provide other means of reaching the valve than
were provided.   The danger of going to the valve along the
jog in the wall when it was icy was apparent to ordinary
observation, and that it was sure to be icy in freezing
weather, and was icy at the time in question, were equally

apparent, for the weather was cold and the water constantly dripped from the valves and made "a deal of ice," as one witness put it, there was "a pile of ice on every throttle," extending down from two to five feet, and the jog was mostly covered with ice, and fires of waste and kerosene were kept to prevent the pipes from freezing. Hence the intestate, if he was of sufficient age, experience, and capacity to fully comprehend the danger he incurred in going to the valve, went at his own risk, and the defendant is not liable. But the dangers of a particular place may be apparent to one person and not to another. A person of mature years and experience might fully comprehend them, while a youth, from lack of years, experience, or capacity, might wholly fail to comprehend them. It would be a breach of duty on the part of a master to expose a servant of the latter character, even with his consent, to great danger, without instruction and caution sufficient to enable him to comprehend the danger, and to do his work safely, with proper care on his part. It was, therefore, competent for the plaintiff to show that there had been such a breach of duty on the part of the defendant, and that, although the intestate continued to work in the place he did and assented to do so, yet he was in fact incapable of appreciating the danger to which he exposed himself by going to the valve and of going there safely without instructions and cautions that he did not receive. *Sullivan* v. *India Manufacturing Co.* 113 Mass. 396. But it cannot be assumed that this duty, if it existed, was not performed ; the burden was on the plaintiff to show both its existence and its non-performance, and the testimony does not tend to show either. *Sullivan* v. *India Manufacturing Co.* 113 Mass. 396, 399 ; *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182 ; *Chicago Anderson Pressed Brick Co.* v. *Reinneiger*, 140 Ill. 334 ; 33 Am. St. Rep. 249.

There is another class of cases in which the master is not relieved from liability for injuries to his servant who is re-

quired to perform dangerous work, although the danger is obvious and warning and instruction have been given; as, when the servant is so young and inexperienced as not to be able to comprehend and guard against the danger to which he is exposed. A master would have no right to set such a servant at such work, and he would do so at his peril. But this case is not assignable to that class, for the testimony does not tend to show that the intestate was such a servant. In the absence of anything to show the contrary it must be assumed that he had the intelligence and understanding that boys of his age usually have. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182.

The testimony does not, therefore, tend to show that the death of the intestate was caused by the neglect of any duty that the defendant owed to him, and a verdict for the defendant was properly directed.

*Judgment affirmed.*