## 1008. PLATT *v.* SOUTHERN PHOTO MATERIAL CO.

1. A pauper affidavit filed to avoid payment of costs in this court, in a case brought by an infant through his next friend, should verify the next friend's poverty and inability to pay the costs.

2. The employment of a child under the age prescribed by the child-labor law, in a factory or manufacturing establishment, is negligence per se; and if the child is injured by reason of being so engaged, he has, as a matter of law, a cause of action against the employer. However, if the child employed is above the designated age, a failure on his employer's part to take and file the affidavit prescribed by section 5 of that act, though criminal, is not such an act of negligence, relative to the child, as to make the employer liable as a matter of law for his injuries.

(*a*) The words "per se," when used as descriptive of negligence, refer merely to the method by which its existence is to be ascertained from the facts of the case. If the lawmaking power, in dealing with a subject involving duties, goes into concrete specifications as to what shall or shall not be done, the court takes judicial cognizance that the precise duty exists, and that a breach of it is negligence. This is called negligence per se, in contradistinction to the wrongs or derelictions that arise from violations of those duties which have received recognition in the law, but which have not been defined, or have been defined only in such general or abstract language that there must be a finding, as a question of fact (usually by a jury), that the particular transaction involves a violation of the duties so imposed, before the existence of negligence is to be regarded as established.

(*b*) Before negligence per se, or any other form of negligence, is actionable in a given case, it must appear that the broken duty was due the plaintiff personally or as a member of a class; also that it has directly and proximately caused legal injury to him.

(*c*) In determining whether the violation of a statute is such negligence as to support an alleged cause of action, the court is called upon to examine the law in respect to its purposes; for if it appears that, notwithstanding the violation, none of the things contemplated and sought to be guarded against have ensued, or that the plaintiff is not the person or does not belong to the class to whose benefit or for whose protection the enactment was made, the court will not declare that there is a case of negligence per se as to that cause of action or that plaintiff.

3. The child-labor law, by specifically providing that the employment of children under a designated age in certain occupations shall be absolutely unlawful, has in nowise limited the general law in regard to putting immature persons of tender years to work at or near dangerous

machinery. In a case not covered by the statute, the question of the defendant's negligence in employing the young person at the particular occupation is usually one for the jury.

Action for damages, from city court of Atlanta—Judge Reid. January 15, 1908.

Argued March 13,—Decided March 30, 1908.

Platt, a minor, by his next friend sued the Southern Photo Material Company, alleging, that in the year 1907 the defendant owned a manufacturing establishment, in which it operated printing, engraving, and embossing presses, and that he, a mere boy, thirteen years of age, but not larger or more mature than the average boy of eleven, was put to work, feeding small cards into an embossing press, which was a very dangerous machine—a work suitable to be done only by a person of mature age, experience, and discretion, and in his attempt to operate the machine his hand was caught, and certain enumerated injuries resulted. The petition also sets up that at the time of the employment and the injury, the defendant was guilty of a violation of the act of 1906, known as the "child-labor law," and particularly section 5 of that act, in that the defendant hired the petitioner, a child, to work in its manufacturing establishment, without having first obtained and placed on file an affidavit as to his age, etc., as required by that act and section. Demurrers, general and special, were filed. The trial judge held that while to employ a child under the age prescribed by the child-labor law would be negligence per se as to him, to employ a child above the age without filing the affidavit would not be; and upon these grounds sustained the general demurrer.

The child-labor law of 1906 (Acts 1906, p. 98) is, in substance, as follows: By section 1, no child under ten years of age shall be employed or allowed to labor in or about any factory or manufacturing establishment under any circumstances. By section 2, no child under twelve years of age shall be employed unless certain particular exigencies, therein enumerated, exist. By sections 3 and 4, no child under fourteen years of age shall be employed, except during certain hours and on certain conditions; but since, by the terms of the law itself, these two sections were not to become effective until January 1, 1908, and the injury occurred in 1907, they may be dismissed from present consideration. By sections 5 and 6, it is unlawful for any person operating any factory or man-

ufacturing establishment to hire or employ any child unless he keeps on file in the office, open to the inspection of the grand jury, an affidavit from the parent or guardian of the child, certifying to its age, etc.    Section 7 makes a violation of any of the provisions of the act a misdemeanor..

Andrews & Skeen, W. R. Hammond, for plaintiff.

Evins & Spence, for defendant.

.POWELL, J. ·  (After stating the foregoing facts.)

1.    Upon the call of this case for argument the clerk brought to the attention of the court the fact that the costs had not been paid, and that the pauper affidavit which had been filed by the next friend did not verify his own poverty and inability to pay the costs, but only that of the infant plaintiff in error.    The court took the matter under advisement and, having reached the conclusion that the affidavit is insufficient for the reason stated, has caused the costs to be paid.    The question whether the affidavit made to submit a case brought to this or the Supreme Court by an infant through his next friend in forma pauperis should verify the poverty and inability of the infant or of the next friend has not been, so far as we can find, decided in any reported case.    However, by a practice of long standing, the Supreme Court has required the affidavit to relate to the next friend, and not to the infant; indeed, in the case of Shelly v. Haslett, in the Supreme Court, at the October term, 1900, the point was directly made; a pauper affidavit in that case verified the poverty and inability only of the next friend, and a motion to withdraw the case presented the question whether the affidavit was sufficient, so as to relieve counsel for the plaintiff in error from responsibility for the costs; and the court instructed the clerk, in an opinion, written and preserved in the clerk's office, though never printed, that the affidavit was in proper form.    Ordinarily, it is true, the affidavit must relate to the financial ability of the real party plaintiff in error, and, in a case prosecuted by a person in a representative capacity, such as an administrator, executor, trustee, etc., must relate, not to his personal inability, but to that of the estate he represents.    Such, however, is not the case as to suits of infants.    The reason for the difference seems to be this:    The power to contract a liability for costs, by filing or prosecuting a suit, is, according to a long array of authorities, beyond the capacity of an infant.    Execution can not issue against him for

11

costs; "for it is said costs came in lieu of the common-law amerce-
ment of the plaintiff pro falso clamore, and the infant could not
be subject to amercement, and of course could not be liable to its
substitute." Cook *v.* Adams, 27 Ala. 294. That there may be
protection in the matter of costs to parties, officers, and others en-
titled, as well as for the further purpose that there shall be in
charge of the case some discreet person who may receive the neces-
sary notices, accept service of papers, and attend to other matters
incident to the prosecution of the cause, the law will not permit an
infant, over objection, to prosecute a suit in the courts by himself
alone. The appointment of a next friend or guardian ad litem—
and between the two there is but little or no difference for all prac-
tical intents and purposes—is a matter primarily for the court;
but usually, in his petition, the infant names the next friend, who
consents to act, and the court, by allowing the action to proceed,
ratifies that appointment. The court might refuse to recognize the
next friend named in the petition, and would have the power to
appoint another. The next friend, by assuming to act, assumes
primary responsibility for the costs. *Nance v. Stockburger,* 112
*Ga.* 90 (37 S. E. 125, 81 Am. St. R. 22).

So far as the payment of costs is concerned, every infant is al-
ways, theoretically at least, in a state of inability; for all his
moneys, etc., are, or should be, in the hands of his legal guardian.
No court can, by execution or otherwise, compel an infant to pay
costs; nor should a court allow him voluntarily to pay them, for this
would be an expenditure from his estate that should be sanctioned
only by that court or officer which has cognizance of his financial
affairs. The court, therefore, looks to the next friend or guardian
ad litem for the costs. As to this incident of the case he is the
party, the person against whom the judgment immediately goes;
and the infant is not. The infant's estate is ultimately responsi-
ble for the costs if the expenditure is bona fide and for the infant's
apparent good. The court having his estate under its jurisdiction
may, therefore, upon proper application, direct the legal guardian
or other trustee having possession of the funds to pay the costs to
the next friend or guardian ad litem, or to the officers of the court,
if they have not been paid. If the court in which the suit is
filed appoints or accepts a next friend who on account of poverty
is unable to pay the costs, this court will not, for his failure to

perform that duty, refuse to entertain the writ of error, if the fact of his poverty and inability is formally verified in the manner prescribed by the statute.   The infant's poverty or inability to pay the costs is immaterial, for although he should be a pauper, the next friend, who is primarily responsible, should and must pay the costs if he is able to do so.

2.   Counsel, having been informed of the views of the court on the question of the costs, have caused them to be paid, and we come now to a consideration of the case presented by the record.   The broadest contention of the plaintiff in error, and indeed the only one actually considered by the trial judge, is that his employment by the defendant, without taking and filing the affidavit required by the child-labor law of 1906, rendered the employment unlawful, and therefore a continuing act of negligence per se; and that since the plaintiff received his injuries while engaged in that employment, the defendant is necessarily liable to him for the ensuing damages.   The expression "negligence per se," as used by the various courts, has not acquired that precise and definite meaning so essential to the prevention of ambiguity.   It is sometimes used to denote those transactions in which an unquestionable wrong is so directed against a particular person that damages are bound to ensue to him, and is therefore practically synonymous with the expression "actionable per se;" but accurately employed, it has a more limited meaning.   Negligence, it should be remembered, is in itself only one of the essential elements prerequisite to a cause of action in a given case.   Every violation of any of those duties of omission or commission which, arising from man's state as a social being, have received recognition by the law of the land, either generally or specifically, is an act of negligence.   So long as these duties remained undefined or defined only in abstract general terms, a breach is not properly denominated negligence per se; but when any specific act or dereliction is so universally wrongful as to attract the attention of the lawmaking power, and this concrete wrong is expressly prohibited by law or ordinance, a violation of this law, a commission of the specific act forbidden, is, for civil purposes, correctly called negligence per se.   In those jurisdictions in which the application of the facts to the law rests with the jury, the court can not primarily declare that any particular concrete act or state of circumstances amounts to a breach of duty, unless

the law so expressly declares; this finding is left to the jury; but if the law itself puts its finger on a particular thing and says "this is wrong," the court may also (for there is no question as to a fact which the law says exists) put its finger on that same thing and say, "This is negligence—negligence per se." This artificial distinction, between negligence per se and negligence not per se, respects, therefore, merely the method by which the existence of negligence is to be ascertained in particular instances. When once its existence is determined, whether through the court's judicial cognizance or the jury's finding as a matter of fact, there is no further distinction made; and the one form of negligence has, in the further consideration of the case, just the same effect as the other—no more, no less. Salt is just salt, whether dug from the mine in its natural state and called salt at once, or crystallized in some chemist's laboratory and called NaCl; the savor is the same in both cases. The plaintiff who has established the fact that a defendant has been guilty of doing what he ought not to have done, or of not doing what he ought to have done, has something further to do, in order to show a cause of action in his behalf; he must show not only that he has directly and proximately suffered injury therefrom, but also that he is so related to the duty and the neglect thereof that he has the right to complain. Therefore, although an act be negligent, it does not afford a given plaintiff a cause of action, unless it is negligent *as to him;* and when the lawmaking power has created a particular obligation or has inhibited certain conduct, before a plaintiff can invoke that law in his behalf it must appear (to borrow an expression from the grammarians) that he, either in his own right or as a member of a class, is the indirect object of the legislative action. The statute being the direct object, he must occupy the relation expressed by the dative case, while the statute stands in the accusative. Therefore, in determining whether the violation of a statute is negligence so as to support an alleged cause of action, the court is called upon to examine the law in respect to its objects; for if it appears that, notwithstanding the violation, none of the consequences contemplated and sought to be guarded against have ensued, or that the plaintiff is not the person or does not belong to the class to whose benefit or for whose protection the statute was enacted, the court can not declare that there is a case of negligence per se as to that cause of action or

that plaintiff. The authorities to this end are numerous, but we cite only the following typic cases. *Augusta R. Co.* v. *McElmurry,* 24 *Ga.* 75; *Gravitt's* case, 93 *Ga.* 370, 390 (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145); Morrissey v. Providence R. Co., 15 R. I. 271 (3 Atl. 10); Hayes v. Michigan Central R. Co., 111 U. S. 228, 240 (4 Sup. Ct. 369, 28 L. ed. 410); *Southern Ry. Co.* v. *Flynt,* 2 *Ga. App.* 162 (58 S. E. 374), and cit.

The great wrong so usually resulting from the employment of young children in manufacturing enterprises, the frequency with which their natural indiscretions lead them into doing harm to themselves or to coemployees in such places, the great danger almost always incident to such surroundings, made the putting of those of tender years at such labor so universally a matter of wrong that even prior to 1906 the juries of this State were often called upon to declare, under the general rules of law, that such employments, in the specific cases before them, were negligent; though the question of negligence was issuable in every case. Compare *Beck* v. *Standard Cotton Mills,* 1 *Ga. App.* 278 (57 S. E. 998). In 1906 the legislature, recognizing the universality of the wrong, precluded all inquiry as to the existence of negligence when children were employed below certain ages, by passing the statute forbidding such employments. One of the objects of the statute was to prevent the exposure of children under the designated age, and of employees who otherwise would be called upon to work with such children, to the dangers incident to the presence of these immature and indiscreet persons in such places; and therefore, when a child under the age prescribed is hurt by reason of being so unlawfully employed, or a coemployee is hurt because of some negligent or indiscreet act of such a child, as to the child in the one case and as to the coemployee in the other, the consequence contemplated by the statute having ensued to one of the persons for whose benefit it was enacted, it is justly said that, as to such a cause of action in favor of such a plaintiff, the violation of the law is in its fullest sense negligence per se. Despite a few sporadic opinions to the contrary, this is now the rule almost universally recognized. *Beck* v. *Standard Cotton Mills,* supra; American Car Co. v. Armentraut, 214 Ill. 509 (73 N. E. 766); Queen v. Dayton Co., 95 Tenn. 458 (32 S. W. 460, 30 L. R. A. 82); Perry v. Tozer, 90 Minn. 431 (101 Am. St. Rep. 416, 97 N. W. 137); Leathers v. Tobacco Co., 144 N.

C. 330 (57 S. E. 11, 9 L. R. A. (N. S.) 349) ; Rolin *v.* Tobacco Co., 141 N. C. 300 (58 S. E. 891, 7 L. R. A. (N. S.) 335, and cases cited in the footnote). Besides making concrete the civil duty, previously existing only in the abstract or general law, of not employing certain young persons in dangerous occupations, the legislature also made a breach of that duty a crime; and to prevent violations and to make their discovery easier, further enacted that certain affidavits as to the ages of all children employed should be kept on file, subject to the inspection of the grand jury. The present plaintiff, at the time of his employment and injury, was of lawful age to be employed, and in the passage of the statute the legislature did not intend to prevent his employment; it was not enacted for his benefit; and when the defendant hired him, although he broke the law by not taking and filing the required affidavit, the consequences contemplated—the exposure of a child under the prescribed age—did not ensue; and therefore *as to him* and as to his alleged cause of action the violation of the law was not negligence per se.

3. It was not the intention of the lawmaking power, by singling out certain of the most aggravated evils growing out of the employment of young children and explicitly forbidding them, to diminish in any wise the rules of common law and general jurisprudence under which the putting of any child of tender years to work at a dangerous machine under certain circumstances might be found to be wrongful, and therefore negligent. While, as shown above, the plaintiff did not set forth a case of what was as to him per se negligence, we are of the opinion that the trial judge erred, nevertheless, in sustaining the general demurrer. The boy, according to the petition, was only thirteen years old,—an age now within the protection of the child-labor act,—and was smaller and more immature than the average boy of his age; he was put to work at a machine alleged to be very dangerous and suitable to be run only by a person of mature age, experience, and discretion. It is plain that the pleader relied mainly on the child-labor law, but he also set out a colorable cause of action under the general law. *Beck v. Standard Cotton Mills,* supra; *Canton Mills v. Edwards,* 120 *Ga.* 447 (47 S. E. 937) ; Bare *v.* Cane Creek Coal Co., 61 W. Va. 28 (55 S. E. 907, 8 L. R. A. (N. S.) 284, and case note) ; Steiler *v.* Hart, 65 Mich. 644 (32 N. W. 875) ; Hickey *v.* Taaffe, 105 N. Y.

26 (12 N. E. 286); Pittsburg R. Co. v. Adams, 105 Ind. 151 (5
N. E. 187); Missouri Co. v. Peregoy, 36 Kan. 424 (14 Pac. 7);
Williamson v. Shelton Marble Co., 66 Vt. 427 (29 Atl. 669);
Labatt's Master & Servant, §251. He does not confine his allega-
tions of negligence expressly to the paragraph in which he pleads
the violation of the statute, but says that "by reason of the facts
aforesaid," the defendant, relatively to the petitioner, was guilty
of negligence.

Some of the allegations of the petition are not sufficiently full
and definite to withstand the special demurrers which were also
filed; and as the trial judge has not yet passed judgment as to
them, it will now be in order for him to take them up and to re-
quire the petition to be perfected by amendment. We think that
this court has already made sufficiently plain the degree of definite-
ness required in such suits, by the opinions in the cases of *Cedar-
town Cotton Co.* v. *Miles,* 2 *Ga. App.* 79 (58 S. E. 289); *Southern
States Cement Co.* v. *Helms,* 2 *Ga. App.* 308 (58 S. E. 524); *Jar-
rell* v. *American Pipe Bending Co.,* 2 *Ga. App.* 764 (59 S. E. 186).

*Judgment reversed.*