ARKANSAS STATE HIGHWAY COMMISSION *v.* MODE.

4-6505                                          157 S. W. 2d 53

Opinion delivered December 1, 1941.

*Herrn Northcutt* and *Neill Bohlinger,* for appellant.

*R. W. Robins,* for appellee.

GREENHAW, J.   This is an appeal by the Arkansas Highway Commission from a judgment of the circuit court of Faulkner county in favor of the appellees, Lee Mode and Sylvester Zermatten.   The appellant brought suit against the appellees, alleging that it is the duly authorized agency of the state of Arkansas to construct, maintain and administer the state highway system; that the defendant, Lee Mode, on or about January 27, 1941, was engaged in the business of operating trucks over the state highways, and that Sylvester Zermatten was an employee of Lee Mode for the purpose of driving trucks owned by Mode, and that on this occasion, while acting within the scope of his employment, Sylvester Zermatten was driving and operating a truck and semi-trailer, transporting an R. G. LeTourneau carry-all scraper on highway No. 65; that a bridge known as Fish Trap Bridge on this highway had several years before been erected across North Cadron Creek in Faulkner county, and was part of the state highway system; that warning signs were erected at each end of this bridge, showing that the load limit on said bridge was four tons, and that the said Sylvester Zermatten, in disregard of the warning notice posted at the end of the bridge, drove the truck, which was heavily loaded, onto the south end of said bridge, thereby causing the bridge to collapse due to the excessive weight and width of the truck and contents, and that by reason thereof the appellant was entitled to damages in the sum of $11,000.   The appellees answered, denying the allegations of the complaint and alleging that any damage complained of was due to the negligence of the appellant.

This case was tried before a jury which returned a verdict in favor of the defendants, from which is this appeal.

Appellant contends that under the facts in evidence, the action of the appellees in driving the truck and trailer, with the load therein, upon this bridge was negligence *per se,* and that the court erred in not so instructing the jury, and in instructing the jury to the contrary.   Other

assignments of error were made in the motion for a new trial. We have concluded that these particular assignments of error are controlling here, and that this case will have to be reversed because the court submitted to the jury the question of negligence and failed to instruct the jury that the action of the appellee, Sylvester Zermatten, in driving upon the bridge in disregard of the warning notice which was posted in a conspicuous place at the end of the bridge, constituted negligence *per se*.

John Strohm, a bridge maintenance engineer of the State Highway Department since 1934, who had been engaged as a bridge building engineer since 1910, testified that he was familiar with Fish Trap Bridge prior to the time of its collapse on January 27, 1941; that he had inspected it in 1938 and 1939 and at a number of times before that. When he inspected it the last time he computed the strength of the bridge and took it up with the proper authorities, and it was decided to make the bridge safer and to replace the stringers and put on a new deck, which was done some time later. After this work was done the bridge was in good condition and could carry four tons safely immediately prior to its collapse. Witness went to the scene of the collapse the next morning, and the truck and trailer were resting on the floor system of the bridge at the bottom of the creek. He measured the over-all width of the equipment that was being carried and the vehicle doing the carrying, and this was 11 feet, 5¾ inches, and the width of the bridge at the point of entrance by the truck and trailer was 11 feet, 7½ inches, leaving a clearance of 1¾ inches, or a little less than one inch on each side; that in his opinion a weight of around 30,000 pounds (approximate alleged weight of the truck, trailer and load) would be very dangerous, and that was why a four-ton load limit sign had been posted at each end of the bridge.

J. F. Mayne testified that he was employed by the State Highway Department in the capacity of district maintenance engineer, and his duties consisted of replacing bridges, maintaining roads, and repairing bridges, and that the Fish Trap Bridge was owned and maintained by the State Highway Department on high-

way No. 65, and that this particular highway is within his jurisdiction. He went to the scene of the collapse the morning after it happened and made photographs which were introduced in evidence, showing the load limit signs at each end of this bridge; that a LeTourneau machine such as that carried by the truck and trailer would weigh from 22,000 to 24,000 pounds. He did not know the weight of the truck and trailer.

J. E. Thompson testified that he was a field supervisor for the traffic and safety division of the State Highway Department, and that he was familiar with the type of equipment that was being driven over the bridge at this time, and that the truck and semi-trailer which were used would weigh around 10,000 pounds.

Sylvester Zermatten, the driver of the truck in question, testified that he was driving the truck at the time it fell through the bridge and had driven over the bridge frequently before that time, and that even the day before he had carried a heavy load over it; that he saw the posted load limit sign, had seen it on a number of occasions when he was driving over the bridge, and knew it was there; that the load on this occasion was "quite a bit" over four tons; that he did not generally disregard signs, but failed to heed this one because he had crossed this bridge before and thought he might get across this time; that he had no permit for overweight and went across with the heavy load in spite of the warning sign; that he did not hit the bridge and would have felt the blow if he had; that he had a clearance of about $3\frac{1}{2}$ inches on each side, and that he was driving slowly at the time.

A number of other witnesses testified as to the age and condition of the bridge, and that a number of heavy trucks, busses and vehicles had been crossing this bridge, some of them greatly exceeding the four-ton limit upon the signs at each end of the bridge. We deem it unnecessary to set out this testimony of other witnesses, for the reason that the fact that others violated the warning sign, did not justify or authorize the appellees in this instance to do so.

All witnesses except the appellee, Lee Mode, who testified as to the weight of the truck, trailer, and load, including the appellee, Sylvester Zermatten, who was in charge of the truck and equipment on this occasion, placed the weight thereof considerably in excess of four tons. The testimony of Mode upon this question was somewhat indefinite, and he was not present when the bridge collapsed. We, therefore, hold that there was no substantial evidence that the truck, trailer and equipment being hauled weighed only four tons or less, which would warrant submission of this question to the jury.

We do not agree that the measure of damages would be the cost of replacing this bridge. The appellees would be liable only for the actual damage to the old bridge, whatever that may be.

Section 6809 (a) of Pope's Digest reads as follows: "Any person driving any vehicle, object, or contrivance upon any highway or highway structure shall be liable for all damage which said highway or structure may sustain as a result of any careless, negligent or illegal operation, driving, or moving of such vehicle, object, or contrivance, or as a result of operation, driving, or moving any vehicle, object, or contrivance of excessive width or weighing in excess of the maximum weight in this act, even though authorized by a special permit issued as provided in § 6808."

Paragraph (c), § 6799 of Pope's Digest, reads: "When, in the judgment of the State Highway Commission, the permissible axle loads or gross weights as heretofore provided would cause abnormal or excessive damage to roads or bridges owing to weather conditions or other conditions beyond the control of the Commission, the State Highway Commission may, at their discretion, limit or reduce such permissible loads to a point where, in their judgment and opinion, such damage to roads and bridges would be reduced to a minimum." The appellees contend that there was no evidence that the State Highway Commission had authorized the placing at each end of this bridge of the warning signs limiting the loads crossing this bridge to four tons. The highway engineer, Mr. Strohm, testified that before

this bridge had been repaired prior to its collapse, he had examined the bridge and "I took it up with the proper authorities and it was decided to make the bridge safer," and that after the repairs had been made he placed these warning signs at each end of the bridge. Appellees offered no evidence that his act was unauthorized, and the presumption, of course, is that he had authority from the Highway Commission to place these signs at each end of the bridge.

Even if Strohm had no previous direct authority, it is our opinion that the position he occupied carried with it the implied authority to place these warning signs, and that his actions in this regard were fully approved and ratified by the Highway Commission. The appellee, Zermatten, the driver of the truck in question, did not know whether the placing of these signs was authorized. He knew they were there and had seen them on numerous occasions. Regardless of what caused them to be placed there, he deliberately ignored them and admitted that he drove on the bridge knowing that he had a load in excess of the maximum load provided in the warning notice, and his action in doing so was, in itself, negligence for which he and his employer would be liable.

We have not overlooked a number of decisions of this court in which it was held, in negligence cases, that the violation of a traffic law which rendered the violator subject to a criminal prosecution did not of itself constitute negligence *per se*. We still adhere to this doctrine. Such is not the case here. One of the statutes above referred to specifically provides that a person driving a vehicle of excessive width, and weighing in excess of the maximum weight, which causes damage to the highway or highway structure, shall be liable for the damage resulting therefrom. In the case of *Platt* v. *Southern Photo Material Co.*, 4 Ga. App. 159, 60 S. E. 1068, the court said: ". . . but, if the law itself puts its finger on a particular thing, and says, 'This is wrong,' the court may also (for there is no question as to a fact which the law says exists) put its finger on that same thing and say, 'This is negligence—negligence *per se*'."

The usual and ordinary instructions were given regarding negligence and contributory negligence, and what the essential ingredients thereof are, but the court declined to hold that negligence *per se* was applicable in this case. Herein, a majority of the court think the trial court erred. Having reached the conclusion that under the evidence in this case, the damage to the bridge resulted from acts constituting negligence *per se,* for which the appellees would be liable, and liable only for the actual damage resulting to the old bridge, the judgment of the lower court is reversed and the cause remanded for a new trial for the purpose of ascertaining the actual damage to the old bridge.

SMITH, J., (dissenting). The statute (§ 6904, Pope's Digest) does confer authority upon the State Highway Commission to make reasonable rules and regulations for traffic on state highways, including the right to fix load limits and to place danger signals, and the above-stated section provides that "Any person . . . who shall violate any of the rules or regulations made and published under the authority herein granted shall be deemed guilty of a misdemeanor," and upon conviction shall be punished by a fine or imprisonment or by both fine and imprisonment.

There was no testimony that the Highway Commission had taken any action in regard to the bridge over Fish Trap Ford, or had authorized the placing of a warning sign on the bridge as to the maximum load limits. It is a mere inference, without any testimony to support it, that because the Highway Commission might have ordered a warning notice placed on the bridge, it had done so.

But this is not a criminal prosecution. It is a suit for damages, predicated upon the theory that it was negligence—and the majority have found negligence *per se*—for appellee's truck to have been driven over the bridge, inasmuch as the truck, with the trailer, weighed more than four tons. The testimony is sufficient to support the finding that the weight of the truck and trailer exceeded four tons; but this testimony is not undisputed.

But even if this testimony were undisputed, a question would yet remain, not only whether appellee was guilty of an act which must be denounced as negligence *per se,* but also whether he was guilty of negligence at all.

The jury has found—and I think the testimony sufficient to sustain the finding—that appellee was not guilty of negligence. The testimony shows that the state, through its Corporation Commission, had authorized at least two public bus lines, the vehicles of which, with their loads, weighed from ten to fifteen tons, to use the bridge in transporting passengers, and that it was so used. Many heavy-hauling truck lines were licensed by the state to operate over this highway, and some of the loads regularly carried over the bridge would weigh ten tons or more, and the Highway Department itself hauled loads weighing as much as ten tons over the bridge. The driver of the truck had driven it across the bridge the day before, loaded, as his truck was when the bridge collapsed, with road-building machinery, and had seen trucks of much greater weight crossing the bridge previously. Must we say this was negligence *per se* or was it negligence at all? The jury has found that it was not.

Now, appellee could not sue the state, because of its sovereignty; but it appears to me that, in all good conscience, he had a better case against the state than the state had against him. The testimony is undisputed to the effect that the Highway Department was apprised of the condition of the bridge, yet another department of the state, the only one having that authority, had licensed use of the bridge as a part of the state's highway system by vehicles of more than twice the weight of appellee's truck, and these licensed vehicles regularly availed themselves of their licenses.

It was said in the case of *State* v. *Arkansas Brick & Mfg. Co.,* 98 Ark. 125, 135 S. W. 843, 33 L. R. A., N. S., 376, that "The right of the state to be held exempt from the recovery of judgments against it is no clearer than the right of a defendant, in a suit by the state, to avail himself of all and every character of defensive pleas, except limitation. *State* v. *Morgan.* 52 Ark. 150, 12 S. W. 243. He cannot by a cross action have an affirmative

judgment against the state for any excess he may be entitled to over and above the state's claim; but this is the extent of his disadvantage from having dealt with the sovereign.''

Had this been a privately owned toll bridge, the owner of which had posted a warning against its use by trucks weighing more than four tons, but who permitted its use by trucks of more than twice that weight and collected tolls for that use, we would probably hold—at least this writer would—in a suit between the toll bridge owner and the owner of the truck that the merits of the case were with the truck owner, and not the owner of the toll bridge. The fact that the state which, because of its sovereignty, may not be sued is a party does not affect the legal principles which should be applied.

In any event, it occurs to me that on the question, whether appellee was guilty of negligence in violating a traffic rule, if, indeed, such a rule had been made, which fact was not shown by the testimony, the violated rule was merely evidence of negligence, and not conclusive of that fact. We have many cases to that effect. One of the latest of these, which cites a number of earlier cases to the same effect, is that of *Shipp* v. *Mo. Pac. Trans. Co.*, 197 Ark. 104, 122 S. W. 2d 593, where it was said: ''It is the settled rule in this state that violation of a traffic law, whether promulgated by municipal or state authority, may be shown, but the fact that such law has been violated at a time and in circumstances which give rise to a contention that injury has been occasioned thereby is not to be asserted as creating liability as a matter of law. Such violation is evidence of negligence, but is not conclusive of the issue. (Citing cases.)''

In my opinion, the judgment of the court below should be affirmed, and I, therefore, dissent.