No. 33,240

THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellee,* v. THE AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, *Appellant.*

(70 P. 2d 20)

Opinion filed July 10, 1937.

*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellant.

*Wint Smith, Otho W. Lomax* and *Lester M. Goodell,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment overruling a demurrer to a petition in which the state highway commission seeks to recover damages for the destruction of a bridge on a public highway.

The petition alleged that heretofore, about 1900, a bridge of steel and wood was constructed at public expense over Buffalo creek on a public road in Jewell county. This bridge was adequate to carry the traffic of that time; but it was not designed to carry the heavy motor traffic of 1934, by which time the bridge and road of which

it was an integral part had passed under the statutory control of the state highway commission.

The petition alleged that at distances not less than 250 feet from each end of the bridge certain signs had been posted, that these signs were 24 inches square, with black raised letters on a white background, bearing this legend:

LOAD LIMITS

PERMITTED ON THIS BRIDGE

MAXIMUM WEIGHT 2 TONS

WIDTH 8'

HEIGHT 13'

TRACTORS WITH LUGS

PROHIBITED

It was also alleged that these signs had been posted long prior to April 15, 1934, and that they "were open, visible and notorious to all users and travelers on said highway."

Plaintiff alleged that on that date a heavily loaded truck belonging to the Concordia Creamery Company and operated by one Glen Calder, its employee, and one Ben Tipton, as helper, drove upon the bridge; that this truck without its load weighed 6,549 pounds, and that its load consisted of 2,000 pounds of feed, one barrel of oil and 80 to 100 empty cream cans, each of which weighed about 25 pounds—that the total weight of truck and its load was "at least two and one half times the load limit permitted on the aforesaid bridge."

It was further alleged that while in the employment of the Concordia Creamery Company, and in the pursuit of its business, that company's employees drove this overloaded truck on this bridge, whereby the bridge was knocked off its north abutment and "broken, bent, demolished, ruined and destroyed."

Plaintiff further alleged that the reasonable cost of restoring the bridge would have been $1,597.88, but as it was not designed to suit the heavy traffic of the present time a new bridge, costing a much greater sum, was erected by the plaintiff; and that the demolition of the old bridge caused plaintiff to expend the sum of $582.40 to maintain a two-mile detour during the period of constructing the new bridge.

For cause of action against this defendant, the American Mutual Liability Insurance Company of Boston, plaintiff alleged that on June 1, 1933, the Concordia Creamery Company presented to the State Corporation Commission an application for a permit to operate

its motor vehicles on the public highways as a "private motor carrier," and filed with the commission a copy of a policy of liability insurance, No. AL 166672, issued by the defendant and expiring on June 1, 1934; and pursuant thereto the commission issued a permit to the Concordia Creamery Company to operate its motor trucks on the public highways.

Attached to the amended petition is a copy of the policy, which, in brief, recites that it was issued to the Fairmont Creamery Company and/or its subsidiaries, and that it bound itself—

"1. To pay, within the policy limits applying thereto, each loss by reason of liability imposed upon him [insured] by law for damages . . . on account of damage to the property of others and the resulting loss of use thereof, caused by an accident, occurring within the policy period, by reason of the use, ownership, maintenance, or operation of the motor vehicle or trailer, or, if the motor vehicle is of the commercial type, by reason of the loading or unloading of merchandise, provided [etc.] . . ."

On the policy was the following endorsement:

"It is hereby agreed and understood that the Fairmont Creamery Company is an additional named insured in the policy to which this endorsement is attached.

"It is further agreed that this endorsement is effective June 1, 1933.

"Attached to and forms part of Auto Liab. Policy No. AL 166672 of the American Mutual Liability Insurance Company of Boston, issued to Concordia Creamery Co., expiring June 1, 1934.

"Dated at Kansas City, Mo., this 28th day of May, 1934.
"F. P. MULLANEY, *Secretary.*          CHARLES E. HODGES, *President.*"

This was followed by another endorsement, which, among other recitals, contained the following:

"KANSAS ENDORSEMENT

"In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby waives a description of the motor vehicles to be insured hereunder and agrees to pay . . . damage to property or baggage (not including property usually designated as cargo) other than the insured's, caused by any and all motor vehicles operated by the insured pursuant to the certificate of public convenience and necessity issued by the Public Service Commission of Kansas, with the limits set forth in the schedule shown hereon. . . .

"This endorsement is applicable to cars located in the state of Kansas.

"Attached to and forms part of Auto Liab. Policy No. AL 166672 of the American Mutual Liability Insurance Company of Boston, issued to Fairmont Creamery et al., expiring June 1, 1934."

The prayer of plaintiff's petition was for $2,180.28, as the alleged value of the bridge and the expense of maintaining a two-mile detour for a year.

The defendant insurance company filed a motion to strike out certain parts of plaintiff's petition on the grounds that they only pleaded conclusions of law, that the action was not maintainable against this defendant, and that the proper measure of damages was not pleaded. This motion was overruled. Defendant then interposed a general demurrer which was likewise overruled.

Defendant appeals, presenting several objections to the judgment, the first of which is that the action was not maintainable by plaintiff against this defendant alone.

Analyzing this objection in detail, it is clear that the state highway commission, being the present official board charged with the duty of caring for the public highway of which this bridge was an integral part, does have authority to maintain such an action as the one at bar. G. S. 1935, 68-152f (since amended), read:

"The state highway commission, board of county commissioners or township board having control of any bridge, causeway, viaduct or trestle may erect and maintain notices not less than 250 feet nor more than 500 feet from each end of the approaches thereto, such notices to be legible at a distance of 50 feet, and shall state the maximum weight of vehicle with load which the bridge, causeway, viaduct or trestle will safely carry and the maximum speed of vehicles which said structures are capable of sustaining. The owner and/or operator of any vehicle driven on any bridge, causeway, viaduct or trestle posted as provided herein shall be responsible for all damage resulting to such bridge, causeway, viaduct or trestle if the weight of the vehicle and load exceeds the maximum load as posted under this section, or the speed at which said vehicle is driven upon or across such bridge, causeway, viaduct or trestle exceeds the maximum speed as posted. The amount of any damage so caused to any such structures may be recovered by action at law by the authorities charged with the maintenance of such structures, from the owner and/or operator of such vehicle."

The defendant calls attention that the facts touching the erection of the warning signs were not well pleaded. Plaintiff alleged that the signs were erected not less than 250 feet from each end of the bridge. The statute says they should be erected not less than 250 feet nor more than 500 feet from the bridge ends. How far from this bridge the warning signs were set is not stated in the petition. As set they were visible, but where? The petition is silent. They might have been erected a mile from the bridge.

However, this court would hardly be justified in holding that plaintiff's petition was demurrable on this point alone.

It is next urged that in view of the fact that this action is purely statutory, not maintainable as for common-law negligence, the plain-

tiff must bring itself squarely under the statute; and whatever liability attaches to the destruction of the bridge must be in accordance with the statute. The statute (quoted above) says damages to the bridge caused by overloading "may be recovered . . . from the owner and/or operator of such vehicle." It is argued that this defendant was neither the owner nor the operator of the truck which broke and ruined the bridge. Quite true. But the statute relied on is not the only one pertinent to this lawsuit. Another statute *in pari materia* is the one which provides that a private motor carrier shall carry insurance to indemnify those who may sustain property damage through a breach of the statutory regulations pertaining to the operation of his truck on the public highway. In part, it reads:

"No certificate or license shall be issued . . . to any . . . 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by, the public service commission, a liability insurance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary to adequately protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier." (G. S. 1935, 66-1,128.)

It has been held that under this latter statute an action for damages for death of a person caused by the negligent operation of a motor truck on the highway was maintainable against the insurance carrier without impleading the insured. (*Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918; Id., 143 Kan. 771, 57 P. 2d 16.) See, also, *Twichell v. Hetzel,* 145 Kan. 139, 64 P. 2d 557; *Meyer Sanitary Milk Co. v. Casualty Reciprocal Exchange,* 145 Kan. 501, 66 P. 2d 619; *Farmer v. Central Mut. Ins. Co.,* 145 Kan. 951, 67 P. 2d 511.

Read and construed together, as we think these statutes should be construed, this action was maintainable against this defendant insurance carrier, unless other demurrable grounds appear in the petition.

Coming, therefore, to the principal question, the insurance contract was attached to the amended petition, and plaintiff's cause of action hinges on its terms and on the allegations of the petition which refer to it. Certainly this insurance contract was not issued to the Concordia Creamery Company. It was issued to the Fairmont Creamery Company and/or its subsidiaries. It is not alleged that the Concordia Company which owned the overloaded truck which destroyed

the bridge was a subsidiary of the Fairmont Company, or an "additional named insured" to be included among those covered by the policy. On the contrary, the endorsement on the policy, quoted in full above, recites that the policy was issued to the Concordia Creamery Company, and that the Fairmont Creamery Company was an additional insured. If this insurance contract or its endorsement was defective in its merely clerical aspects, it would have been quite proper to plead the pertinent facts and ask for its reformation. But not only was this not done, but defendant's motions to strike out the pleader's conclusions and to require the specific facts to be pleaded which were relied upon for recovery against this defendant were resisted by plaintiff and overruled by the court. In that situation the sufficiency of the petition is subject to critical scrutiny when tested by the demurrer thereafter lodged against it. In *Mergen v. Railroad Co.*, 104 Kan. 811, 180 Pac. 736, it was said:

"After a motion to make certain allegations of a petition more definite and certain has been overruled, such pleading cannot, in respect to such allegations, be upheld as against a general demurrer unless it fairly states a cause of action without resort to inferences or the construction of doubtful language." (Syl.)

To the same effect were *Stewart v. Balderston*, 10 Kan. 131, syl. ¶¶ 3, 4; *Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965; *Brunsilius v. Farmers & Merchants State Bank*, 143 Kan. 148, 53 P. 2d 476; *Leeka v. Yount*, 145 Kan. 155, 64 P. 2d 24.

It is next argued that the estimated replacement cost of the bridge was not the proper measure of damages. This particular bridge was out of date, but it did serve the needs of the locality for light loads, and the manner of its destruction was inexcusable, if not criminal. Under the circumstances, this court is not disposed to lay down any hard-and-fast rule as to the measure of damages. Ordinarily the measure of damages for injury to a bridge is the cost of repairing it (*Sewall's Falls Bridge v. Fisk & Norcross*, 23 N. H. 171; *West v. Martin*, 51 Wash. 85, 97 Pac. 1102, 21 L. R. A., n. s., 324.) Included in plaintiff's claim for damages is an item of $582.40 for expense in maintaining a detour of two miles while the new bridge was being constructed. But the statute only allows a recovery for the damage to the bridge itself—"damage so caused to any such structures may be recovered" is the language of the statute. Nothing under this statute is recoverable as consequential damages.

Considering together the foregoing defects in this petition, this court is not inclined to let it be permanently embodied in our of-

ficial reports—"to be recorded for a precedent"—that plaintiff's cause of action was so well pleaded as to withstand the demurrer thereto. The judgment is therefore reversed and the cause remanded to the district court with instructions to set aside its ruling on the demurrer to plaintiff's petition. Whether the petition is yet amendable within the provisions of the civil code is not argued and on that point we make no decision.

The judgment is reversed.