## STATE v. DICKEY et al.

### No. 14273.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 16, 1942.

Rehearing Denied Feb. 6, 1942.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus, Ross Carlton, Richard H. Cocke, and Ocie Speer, Asst. Attys. Gen., for appellant.

T. R. Boone and Kearby Peery, both of Wichita Falls, for appellees.

SPEER, Justice.

The State of Texas sued Roy and Roscoe Dickey for damages, growing out of the alleged negligent acts of the defendants, resulting in the breaking down of a steel bridge on State Highway No. 25, in Wichita County, Texas.

A jury verdict in response to special issues prompted the court to enter an adverse judgment to the State, and it has appealed. We shall refer to the parties as plaintiff and defendants, as they were in the trial court.

The plaintiff (State) alleged that it had assumed control of Highway No. 25 and the bridge across the Wichita River on and prior to August 12th, 1938, and because of the nature of said bridge, it had determined that loads in excess of ten tons should not be allowed thereon. Accordingly, a sign had been erected at each approach notifying the public of such order.

Plaintiff further alleged that at the time in question, defendants' truck and trailer

were so loaded that the gross weight thereof was much greater than ten tons, and that they had attempted to transport their truck and its load across said bridge without a permit to do so, in violation of the law and the rules and regulations prescribed by the State with reference to load limits on the bridge; that defendants' said acts constituted negligence and proximately caused the bridge to collapse, to the State's damage in the sum of $25,000.

Defendants answered by general denial and specially by allegations of contributory negligence of the State, the substance of which is that the State had permitted the bridge to become old and the braces and supports thereof to get out of repair and to become unsafe and dangerous for the transportation of traffic such as the State knew was passing over it, and such as it was intended by the State should pass over it. Defendants further pleaded that at the time the bridge collapsed, a heavily loaded Coca Cola truck came onto the bridge and the driver of that truck suddenly stopped his vehicle, and that the manner in which he so handled his truck and the excess weight thereof, in addition to the weight of defendants' truck and trailer and the dilapidated condition of the bridge, proximately caused it to fall.

The pertinent parts of the verdict were: (1) the gross weight of defendants' truck and load was "the proximate cause of the collapse of the bridge in question", (2) the value of the collapsed span of the bridge immediately before its fall was $2,200, (3) its value immediately after it fell was the same, (5) the plaintiff maintained the bridge in a manner that it was unable to withstand the weight load reasonably proper for one of that kind and character, (6) such failure proximately contributed to its collapse, (7) the span that fell was in a worn or defective condition, (8) the condition of the braces on the bridge proximately contributed to its collapse, (9) plaintiff maintained the bridge in a manner unsafe for the public, (10) the State's acts inquired about in No. 9 proximately contributed to the failure of the bridge, (11) at the time the bridge fell there was on it with defendants' truck another truck belonging to Coca Cola Company, (13) the manner in which the Coca Cola truck was stopped on the bridge was a proximate cause of the collapse, and (18) the way and manner the driver of the Coca Cola truck handled his vehicle was a new and independent cause of the falling in of the bridge.

The State presents four points relied upon for reversal. They are: (1) Error of the trial court in refusing to sustain its special exception to defendants' plea of contributory negligence, (2) error in submitting to the jury special issues on contributory negligence, (3) error in the court refusing to set aside the verdict on the answers to special issues 2 and 3, and (4) error of the court in refusing to set aside the verdict because of conflict in the answers to special issues 1 and 18.

We deem it advisable first to dispose of the third point raised. By that point, it is contended by the State that the trial court should have set aside the verdict because of the answers to Special Issues 2 and 3, wherein it was found that the bridge was worth as much just after its collapse as it was immediately before. Thus finding that the plaintiff had suffered no damages. If this part of the verdict was proper, then of course any other alleged errors would be immaterial. We have concluded that the verdict in the respect complained of cannot stand and that the trial court should have set it aside upon the request of plaintiff.

It was indisputably shown by the testimony that the 273 foot span which fell contained nearly 200 tons of structural steel and several thousand feet of heavy creosoted timbers. It may not have been of sufficient strength to accommodate overloaded traffic between Electra and the KMA oil fields; this condition had arisen about a year previous, but we can scarcely perceive of the bridge in place having no value other than for salvage so long as it was serving the valuable purpose of use by those not violating the laws of the State. Moreover, the undisputed testimony shows that the structural steel showed little or no signs of deterioration and that its value just before the collapse was practically the same as new material; but that when broken, twisted or "ruptured", as one witness expressed it, the value was materially less. So it is obvious to us that even if the bridge had no value as such, other than a salvage value, the broken span, after it collapsed and fell into the river, was worth less in that condition than it was immediately prior thereto. We recognize the settled rule that when testimony is conflicting the jury is privileged to accept either theory presented. That in such circumstances appellate courts may not substitute

their own conclusions of fact for those of the jury. But in this case we see no conflict in the competent testimony. No witness intimated that the value of the bridge was as much after its collapse as before. It cannot be said that the bridge had no value as such because of the incompetent testimony to the effect that it was dangerous and unsafe, or that the bridge would vibrate when in use, or that it would shake if a dog crossed it. There is not a scintilla of evidence that even the salvage of the broken structure was worth as much in the bed of the river as it would have been in place before the fall. But the testimony of engineers who testified with apparent knowledge of the whole structure and as experts on values, shows indisputably that even the salvage was worth less after the collapse than it was before.

■ There is yet another rule equally well settled, to the effect that even though there be some evidence to support the judgment, if it be so manifestly contrary to the great preponderance of the evidence as to require a new trial in the interest of justice, Courts of Civil Appeals are clothed with jurisdiction and it becomes their duty to reverse and remand the case so that justice may prevail. Shaw v. Centerfield Oil Co., Tex.Civ.App., 10 S.W.2d 144; Leonard v. Smith, Tex.Civ.App., 148 S.W. 2d 259; Canales v. Clopton, Tex.Civ.App., 145 S.W.2d 933. Courts of Civil Appeals will not reverse the judgment of a trial court based upon a verdict rendered on conflicting evidence, unless the verdict is so overwhelmingly against the evidence as to shock the conscience or to show that the conclusion reached was wrong or was the result of some passion, prejudice or improper motive. 3 Tex.Jur. page 1097, section 768. This court may not pass upon the weight of conflicting evidence, but may determine if there is sufficient evidence to support the judgment. 3 Tex.Jur. page 1117, section 782. As we view the verdict relating to the values of the bridge before and after it collapsed, it is clearly wrong and it has been held in such circumstances the court should set it aside, and reverse the case for another trial. Texas Cotton Growers' Ass'n v. McGuffey, Tex.Civ.App., 131 S.W.2d 771, writ denied.

■ In support of the verdict under discussion, defendants rely upon the rule announced in Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332. We have many times had occasion to study the court's holding in that case. Boiled down to shorter terms than those used by the court, it appears that the holding is in effect, that when facts are to be determined solely from opinions of expert witnesses, the jury is not bound by the opinions of such witnesses, they may not disregard them, yet the jury must apply their own personal experiences and observations in determining the weight to be given them. In the case cited the jury was called upon to fix the value of a "gray mule" which the owner had expressed as his opinion to be worth so much, and without any further light on the subject as to the age or qualities of the mule, they found it to be worth less than the amount fixed by the owner. As we understand the opinion, that was not a case in which the verdict should be determined solely from expert testimony, other elements entered into it. At page 335 of 91 S.W.2d, the court said: "There was in this case no evidence as to the size, age, disposition, or other characteristics of the mule to aid the jury. Their problem was simply to find the value of an ordinary gray mule. They had the plaintiff's opinion of the value, but his judgment is not to be substituted for theirs. *The subject is not one for experts*, [emphasis ours] but is one about which a jury may be assumed to have, or be able to form, correct opinions of their own. In such case, while they are not bound by it, the jury may not disregard the plaintiff's opinion, but in valuing that opinion in arriving at their verdict, they have also for guidance, and should be influenced by, the plaintiff's interest in the result of the suit and their own common sense, experience, and knowledge of the subject."

■ In the case at bar, conditions are quite different. As above indicated, there is no competent testimony that the bridge was not sufficient to accommodate such traffic as the State, under its right of regulations, was permitting to use it. This must be conceded to be of some material value as well also the undisputed testimony shows the broken span had a much greater value even for salvage, immediately prior to its collapse. As distinguished from the Simmonds case, supra, the instant case, insofar as values were concerned, depended in a large measure upon the opinions of engineering experts. It was described by them in highly technical and scientific terms. The whole bridge was 500 feet long, consisted of two spans supported by

concrete piers; one span was 140 feet long, and the other 273 feet long; the former did not fail, while the latter collapsed and provoked this suit. It was designated as a through truss steel structure, with steel beams at the base extending from one pier to the other; it had steel frame work both below and above the traffic way so as to cause the top to support the base; each member had its technical function to perform so as to eventually transmit pressure from the traffic way to the concrete piers; some parts were denominated compression while others were termed tension members, and the upper steel beams were called cords, all taken together constituted the type of steel bridge commonly used over rivers. The testimony is lengthy and we have made no effort to disclose the numerous technical terms used by the engineers in their respective detailed descriptions of the structure. We are unwilling to assume that the jury had such personal experiences and observations in' the matters of the nature, kind, quality and value of this bridge as was properly accredited to a jury in arriving at the value of a gray mule, in the Simmonds case, where it was said the subject was not one for experts. Based upon their expert knowledge, the engineers said that immediately before the accident the span that failed was worth from $25,000 to $28,000, and had a salvage value of $3,097, after its collapse. Prior to the accident, the State had posted at the entrance to the bridge a large sign reading: "Warning, Gross Loads Over 10 Tons Prohibited State Highway Department". One of the defendants testified that his truck and trailer contained a heavy piece of machinery called a "bulldozer" and that he knew he was overloaded and had no permit to haul that load over the highway and bridge; he said he knew of the warning sign at the approach. We have concluded that State's motion for the court to disregard the verdict of the jury in response to Special Issues 2 and 3 should have been sustained and this requires a reversal of the judgment.

The first point relied upon by the State was alleged error of the court in refusing to sustain plaintiff's special exception to defendants' plea of contributory negligence. We think there is no merit in the contention. The allegations of contributory negligence are lengthy and involve many charges of dereliction of duty to the public· by the State in the type of bridge construction maintained at the time and place, over which it invited the public to pass. However, it did not invite, but expressly prohibited, its use by persons hauling loads such as defendants had. There are perhaps some allegations of purported facts which were subject to special exceptions but to have sustained the exception as presented would have stricken those which were pertinent, this the court should not have done. Alexander v. Stock Yards National Bank, Tex.Civ.App., 154 S.W.2d 997, writ refused, want of merit. In this case the State voluntarily made itself a party litigant and sought relief through the courts. It thereby subjected itself to all of the rules of procedure applicable to individuals similarly situated. State v. Elliott, Tex.Civ.App., 212 S.W. 695, writ of error refused. It is the settled policy of our law that contributory negligence by a plaintiff, proximately causing the thing complained of, will preclude a recovery, even though it be found that the defendant's negligence likewise proximately caused the injury. This established rule comports with both common sense and equity. No person should. be permitted by a court to profit by his own dereliction of duty to another. 30 Tex.Jur., page 756, section 89. We know of no rule of law by which the State would be immune from the general principles announced, under the circumstances involved here. The State is entitled to each and every right vouchsafed to any and all litigants, no more and no less. If upon another trial, evidence of probative force can be adduced tending to show that the State was negligent in maintaining the bridge in a safe condition for. use by those invited to use it, it will be proper for the trial court to submit that phase of the case to the jury.

The second contention by the State is that the court erred in submitting to the jury the question of contributory negligence by the State. As above indicated we have construed the plea of contributory negligence to mean that the State was negligent in not maintaining the proper kind of a bridge at the place in question reasonably sufficient to sustain the traffic thereon that the State had invited to use it. This,. as we view it, is a rather liberal construction of the pleading. By Special Issue 5 the court attempted to submit the question of contributory negligence. That issue reads: "Do you find from a preponderance of the evidence that the plaintiff main-

tained the bridge in question so that said bridge was unable to withstand the respective weight reasonably proper for a bridge of that kind and character on the highway of the State of Texas, just prior to the time defendants' truck passed over same?" It was answered, "Yes".

If we properly interpret the language used in the issue, it did not elicit an answer in support of the pleadings relied upon. As framed, the answer found that the State did not maintain a bridge sufficient to reasonably accommodate the traffic that was then using the bridge. It is undisputed that the State had limited the weight of loads entitled to its use, a thing it undoubtedly had a legal right to do.

 We have carefully studied the statement of facts before us, and have found no competent testimony tending to prove that the bridge was insufficient to accommodate such traffic as the State, under its restrictions and limitations, was inviting to use it. The nearest approach to such question is found in the testimony of one witness who said he had observed that when he drove a lawful load across it, the bridge would vibrate and sag, as he estimated it, four or five inches; another said when a vehicle went over it, there were vibrations and a rolling sensation to the driver, similar to all "suspension" bridges; an engineer said any bridge of a similar length to this one would vibrate with traffic; even a dog crossing it would produce a certain amount of vibration, but that this did not mean a faulty construction or maintenance; that heat and cold would cause expansion and contraction of the steel in the structure, but all of these things were scientifically cared for by the width of the piers and the fastening of one end of the span to a pier and leaving the other end unattached but provided with rollers to function on a steel plate or "shoe" to absorb vibrations, expansion and contraction of the metal. Another witness volunteered the statements that the bridge was "unsafe" and "dangerous". With the knowledge the witness had that the bridge had collapsed under the circumstances of this case, no doubt he felt justified in the statements, but they came from a non-expert and amounted to no more than opinions and conclusions, and had no probative force. Such testimony was not admissible; incompetent testimony, whether objected to or not when offered, will not

support a verdict and judgment. Henry v. Phillips, 105 Tex. 459, 466, 151 S.W. 553; City National Bank of El Paso v. El Paso & N. E. Ry. Co., Tex.Civ.App., 225 S.W. 391, writ of error refused. There being no evidence to support the plea of contributory negligence, the court erred in submitting the question, and the point under discussion is sustained.

 The fourth point also presents reversible error. The verdict of the jury should have been set aside on account of the irreconcilable conflict between special issues 1 and 18. In the charge, the court correctly defined proximate cause and new and independent cause. In the definition of proximate cause the jury was instructed that the term "meant that cause which, in a natural and continuous sequence, *unbroken by any new and independent cause*", etc. * * * (emphasis ours) and by next paragraph the recognized definition of "new and independent cause" was given. In answer to the first special issue, the jury found that the gross weight of defendants' truck and load was "the" proximate cause of the collapse of the bridge in question and in response to Special Issue 18 it was found that the manner and way the driver of the Coca Cola Company truck operated his vehicle was a new and independent cause of the collapse of the bridge. Under the definitions given by the court the two answers cannot, in law, be true. One destroys and nullifies the other. If there was a new and independent cause, as found in answer to the 18th issue, the acts inquired about in special issue one could not be the proximate cause, and vice versa, if the defendants' truck and load proximately caused the bridge to fall, under the court's definition there could have been no new and independent cause. Taylor v. ABC Stores, Inc., Tex.Civ.App., 145 S.W.2d 294, approved by Supreme Court in 148 S.W.2d 392. In a discussion by the court in the last cited opinion, an analogous point is presented. In that case there were findings of negligence, proximate cause and also "unavoidable accident". All such conditions cannot, in law, exist. When such verdicts are returned the court gives very wholesome rules for the trial court to follow.

For the errors pointed out, the judgment of the trial court is reversed and the cause remanded for a new trial, in conformity with these conclusions.