**SHELL OIL CO., Inc., et al. v. JACKSON COUNTY et al.**

No. 11724.

Court of Civil Appeals of Texas. Galveston.

Dec. 20, 1945.

On Rehearing Jan. 31, 1946.

Blades, Chiles, Moore, Kennerly & Knight, M. C. Chiles, and A. C. Lesher, Jr., all of Houston, for appellants.

M. L. Cobb, Cullen Vance, and S. G. Sample, all of Edna, for appellees.

CODY, Justice.

This is an action for damages resulting from negligence in driving a loaded truck, weighing 35,000 pounds, upon a bridge crossing the Navidad River in Jackson County, resulting in breaking the bridge in two. The action was brought by the County Judge of Jackson County on behalf of Jackson County, against Shell Oil Company, Inc., the owner of the truck, and against its employee, E. R. Taft, the driver of said truck. Jackson County was also named a plaintiff, but hereafter we use plaintiff to refer to Jackson County.

Plaintiff alleged in substance:

That on September 10, 1943, the Shell Company was moving a fleet of trucks from the Cordele Community in Jackson County over the public road toward the City of Edna, which is in a southerly direction from the Cordele Community. That the maximum load that could be safely transported across said bridge had been fixed at six ton gross weight (12,000 pounds), and that a proper notice of said load limit had been duly posted. That the truck driven by Taft was one of aforesaid fleet of trucks, and that Taft saw or should have seen said notice limiting the load that could be safely transported over the bridge to six gross tons. That Taft drove the truck upon the bridge, and the excessive weight broke the bridge down, and completely destroyed its value as a bridge, rendering it necessary for plaintiff to build a new bridge in place of the bridge destroyed, and also to build a temporary bridge to serve the needs of the public during the time the new permanent bridge was being constructed.

That immediately before the injury thereto, the bridge had a value of $8,000 and as a result of said injury its value was reduced to $250. That the reasonable and necessary cost to plaintiff of building the new permanent bridge, in addition to the material which was salvaged from the former bridge and used in constructing said new bridge, was the sum of $7,550. That the reasonable and necessary cost of the temporary bridge was $472, making as the total damages so sustained by plaintiff the sum of $8,022, for which sum plaintiff prayed to recover judgment.

Defendants, Shell Company and its driver, Taft, answered jointly, urging: A plea in abatement, a general denial, plaintiff's contributory negligence, and unavoidable accident.

At the conclusion of the evidence defendants urged a motion for an instructed verdict, which was refused, and the case was submitted to the jury in nineteen special issues. Upon the jury's verdict the court rendered judgment for plaintiff against defendants for the sum of $7,325, with legal interest from January 19, 1945.

In view of the points on which defendants predicate their appeal it is necessary to set out the substance of the following special issues, as answered:

5. When the driver approached the bridge from its northerly side there was posted at or near its northerly end a sign limiting the load to be carried over the bridge to a maximum of six tons, which sign was intelligible to users of the bridge.

7. The driver immediately prior to going on the bridge, by the use of ordinary care, should have known that the sign limited the use of the bridge to a maximum load of six tons.

10. That the bridge immediately prior to breaking on September 10, 1943, did not have a market value.

12. The bridge had a market value immediately after it broke.

13. Such market value was $375.

14. The bridge had an actual value immediately before it was broken.

15. Such actual value was the sum of $7,550.

16—A. That said bridge had no actual value immediately after it was broken.

17. It was reasonably necessary to construct a temporary bridge near the site of the old bridge.

18. The reasonable cost of such temporary bridge was $150.

The jury also found that the driver knew, when he drove the truck on the bridge, that it was not safe to do so.

The amount recovered by plaintiff was arrived at by adding the above found sums of $7,550 and $150, making $7,770, and

deducting therefrom the above found sum of $375. Such result is, as above indicated, $7,325.

The defendants predicate their appeal upon 36 points. But points 1–7, 7–11, 12–16, 21 and 22, 23–24, 25–30, 31–36 are presented as groups of points.

Points 1–7 complained of the refusal of the motion for instructed verdict; and also complained that there was no competent evidence to support the jury's verdict on special issue No. 15, and that such evidence was insufficient; also that no proper lawful measure was made out by the competent evidence,—appellees' damages being statutory under Art. 6716. Also, the Court erred in refusing to give requested definition of "actual damages"; also the competent evidence was insufficient to sustain the answers to special issues 12–15; also that the judgment is excessive.

Points 8–11 complained of the admission of evidence by certain witnesses. Points 12–16 complained of the admission of evidence, and of the submission of special issues 17 and 18.

Points 17–20 complained of admission of testimony relative to the temporary bridge; and of judgment based on said evidence.

Points 21 and 22 complain of the refusal of specially requested instructions.

Points 23 and 24 complain of submission of special issues 1–4, upon the ground that plaintiffs' rights are statutory, under Art. 6716, and that the findings are not sustained by the evidence.

Points 25–30 complain of special issues 2, 3, and 4.

Points 30–36 complain of special issues 5–9; and of the failure to submit certain specially requested instructions.

■ At common law every member of the public has the right to use, in a reasonable manner and with due care, public roads, inclusive of public bridges. And motor trucks are now a common means of transportation and, except where size and character of such vehicles has not been restricted by the legislature, their use upon public roads is fully authorized. Sumner County v. Interurban Trans. Co., 141 Tenn. 493, 213 S.W. 412. Public roads belong to the State and are subject to legislative control, which control may be delegated to local authorities. West v. City of Waco, 116 Tex. 472, 294 S.W. 832.

■ The Legislature has authorized the county commissioners of any precinct, by Revised Civil Statute Art. 6716, under rules therein specified, to forbid or restrict the use of highways, or portions of them, inclusive of bridges, when, among other things, a bridge may be found to have become unsafe. Under said rules, several years ago, the load limit which was permitted to be transported across the bridge in question was limited to six tons—12,000 pounds. Notice of such maximum load limit was posted near each end of the bridge, on the right side thereof to a driver approaching the bridge. The rules require that such notices be posted so as to enable drivers to make detours to avoid the closed or restricted portion of the highway affected. But the only remedy given the public by said rules is that anyone feeling aggrieved, may complain to the county judge in writing, and seek a revocation or modification of the order. The county judge's action on such complaint is final. Such provision, as we construe it, applies to anyone who might feel aggrieved that the notice of the load limit for the bridge was not posted at such a distance from the bridge as to enable a driver to detour, and take some other road. There is no evidence that any complaint was ever made of the location of the notices of the load limitation for the bridge.

Section 3 of said Art. 6716 provides, among other things, that the owner and driver of any vehicle driving it over a public bridge (having its load limited) shall be jointly and severally liable for "all damages which said * * * bridge may sustain as the result of negligent driving, operating, or moving" such vehicle. It is further provided that the amount of such damages may be recovered for the county in an action by the county judge.

■ It will be noted that by the express terms of the statute the damages which are recoverable in such action is the amount of damages which is sustained by the bridge. The statute does not make consequential damages recoverable. A similar Kansas statute was construed by the Supreme Court of Kansas, which court said: "Included in plaintiff's claim for damages is an item * * * for expense in maintaining a detour of two miles while the new bridge was being constructed. But the statute allow a recovery for the damage to the bridge itself—'damage so caused to any such structures may be recovered' is the

language of the statute. Nothing under the statute is recoverable as consequential damages." State Highway Commission v. American Mutual Liability Ins. Co., 146 Kan. 187, 70 P.2d 20, 23. And the Supreme Court of Arkansas said of a like Arkansas statute: "We do not agree that the measure of damages would be the cost of replacing this bridge. The appellees would be liable only for the actual damage to the old bridge, whatever that may be." Arkansas State Highway Commission v. Mode, 203 Ark. 179, 157 S.W.2d 53, 55.

■ It is clear to us that plaintiff's pleading is here drawn, not on the theory that recovery of damages is limited to such damages as were sustained by the old bridge, but on the theory that plaintiff was entitled to recover the cost to it of the new bridge, plus the cost to it of the temporary bridge. Plaintiff, after alleging that defendants had negligently, knowingly and wilfully destroyed the bridge, as a bridge, sought to recover damages in the sum of $8,022, being the cost to it of the new bridge, plus the cost to it of the temporary bridge. The cost to plaintiff of the new bridge, exclusive of the material salvaged from the old bridge and used in the new, was $7,550. The cost of the temporary bridge was alleged to be $472; and these two sums amount to the sum of $8,022, which was sued for by plaintiff, as damages. Plaintiff alleged that defendants knew plaintiff would be required to build a new bridge, and a temporary bridge during the construction of such new bridge, when they destroyed the old bridge.

It is true that plaintiff alleged that the value of the old bridge immediately before it was injured was $8,000, and immediately after it was injured was $250. Such allegation is no doubt sufficient to support a judgment for damages to the old bridge in the sum of $7,750. But, as pointed out, the theory of the action as disclosed by the allegations of the petition was that plaintiff was entitled to recover the cost to the county of the new bridge, and the temporary bridge. Since the cost of the temporary bridge was consequential damages, it had no place in this case at all. Such cost was not recoverable as damages, and it could form no basis in the evidence for arriving at the damages sustained by the old bridge.

■ The only basis upon which the evidence as to the cost of the new bridge might be admissible was in order to furnish the jury with some guide to arrive at the damages sustained by the old bridge, in case it was found to have been destroyed as a bridge, and so not capable of being restored. Highland v. Houston E. & W. T. R. Co., Tex.Civ.App., 65 S.W. 649, 650. As stated in said cause: "Facts and circumstances as to the costs of a new building of like character as the one destroyed, and the extent to which the old building had deteriorated by reason of age and use, were testified to by plaintiff; and from these the jury could have fairly determined the extent of his intrinsic loss, in the absence of market value. That measure of damages should be adopted in each case which will most nearly compensate for the loss sustained, and, where the existence of a market value before and after the loss is shown, the measure given by the court * * * was the proper one [Pacific] Express Co. v. Lasker [Real-Estate Ass'n], 81 Tex. 81, 16 S.W. 792."

■ Whether a new structure is of a like character, with the one that was destroyed, for the purpose of enabling a jury to arrive at the extent of the intrinsic loss, is necessarily addressed to the sound discretion of the trial judge. In the instant case, the similarity of the new bridge to the old bridge was not great, as appears from these facts which are stated by defendants, without challenge, to be undisputed.

The old bridge was of steel structure with wooden flooring, and rested on four concrete pillars, two on each side of the river. It had a superstructure. It was completed in August, 1910, thirty-three years before it was injured. It cost $2,890; had been painted twice, and its flooring had been replaced several times. It had a load capacity of 40,000 pounds when completed, and a life expectancy then of forty years. During the past ten years it had been subjected to a heavier than farm-to-market traffic, as it served for traffic to and from the Cordele Oil Field, which had fifty wells drilled therein. It was 12 feet in width.

The new bridge was at the same site as the old. It had more steel in its composition than the old bridge, was two feet wider, and had no superstructure. It had a load capacity of 80,000 pounds,—twice what the old one originally had, and also had a life expectancy of 40 years when completed. Its cost, exclusive of the steel which was salvaged from the old bridge (and all the steel that was good in the

old bridge was used in the new), was $7,550.

The two bridges were comparable in this respect: Each took care of the traffic, and a bridge at such site was indispensable. The old bridge had deteriorated to the extent that it was by official action declared unsafe, some years before its injury, for a load of more than 12,000 pounds. Three of the county officials testified in substance that in their opinion the intrinsic value of the old bridge just before it was injured was the same as that of the cost of the new bridge. They were not bridge engineers or contractors, but had had experience in Jackson County as county commissioners, or other comparable experience. As we read their evidence, they give as the basis on which they formed such opinion that the old bridge was necessary and served the public needs, and that the new bridge did no more. The jury found that the actual value of the old bridge just before it was injured was $7,550 —the cost of the new bridge.

■ It is obvious that the capacity for service of the new bridge, both as to life expectancy and· load limit, is so much greater than the capacity for service of the old bridge, that an opinion that the intrinsic value of the old bridge at the time of its injury was practically identical with the cost of the new bridge is clearly wrong, and it has been held in such circumstances that the court should set aside a verdict, even though based on some evidence. State v. Dickey, Tex.Civ.App., 158 S.W.2d 844, writ refused.

The Dickey case was a case where a bridge collapsed and the court set aside the verdict, relating to values of a bridge before and after it collapsed, as clearly wrong. We must here reverse the case and remand it for a new trial because the jury's verdict that the actual value of the old bridge at the time it was injured was $7,550.

In view of another trial we think it is necessary to rule on certain of defendant's points relating to matters which may arise on another trial. The cost to the county of the temporary bridge is consequential damage, and is not recoverable in this action, as the only damages which may be recovered are the damages sustained by the injured bridge.

■ There was evidence from which it could have been inferred that the old bridge could have been restored, as well as that it had been destroyed as a bridge. If it was capable of being restored, the measure of the damages would be the reasonable cost of repairing it and the replacements, and if the bridge as restored would have been worth less, that lessened value would also constitute damages sustained by the bridge. See Chicago R. I. & G. R. Co. v. Zumwalt, Tex.Civ.App., 239 S. W. 912. The measure of damages to be applied in an action for an injury sustained by a public bridge stands in a class by itself. It is built to fit a particular site. Practically speaking it can only be sold by converting it into salvage material. The value of the real estate to which a public bridge is attached, before and after it has ·been damaged, obviously cannot be used as a basis for determination of damages. It would, of course, be a simple thing for an engineer to determine the present day cost of erecting a bridge where the old bridge has been destroyed, and by figuring obsolescence according to. accepted methods or standards to determine the value of a bridge at the time it was injured. But that is not the only means of arriving at the value of the old bridge at the time it was destroyed. The measure of damages to such a bridge, when it is completely destroyed, is the actual value of the bridge at the time it was destroyed, less the market value of the material of which it was composed—we believe such material ordinarily can be shown to have a market value, even if it is reduced to junk. Such measure of damages was applied here. And we reverse the cause, not because the court employed the wrong measure, but because the verdict is excessive. We do not believe that the court erred in declining to .give the definitions requested by defendants on "actual value" and "intrinsic" value. Said definitions could not, we believe, have application to a bridge in place just before it is injured, because it is not, so long as it remains a bridge in place, subject to sale, and definitions of value in terms of salability cannot be applied. We agree with plaintiff that the term "actual value" is not a term of art, and does not require definition, at least as applied to a thirty-year old bridge.

■ We think that whether or not the notice of the load limit was legible was a fact question, and plaintiff adduced evidence to the effect that it was. The defendants adduced evidence that the notice

was not eligible, and introduced photographs of the signboard in evidence which supports their contention that the notice as it stood posted at the time in question was not legible. We know of no authority, and defendants have cited none, holding that photographs may not be rejected by the jury in favor of the testimony of witnesses who testify to facts as being contrary to what is indicated by such photographs.

For the reasons given the judgment is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

## On Motion for Rehearing.

Plaintiff (appellee) in its motion for rehearing, but without prejudice to its motion, requests that under operation of Rule 440, Texas Rules of Civil Procedure, in view of the fact that we reversed the judgment of the court below solely because of excessive damages awarded, this court state the amount of the excess to the end that plaintiff may be afforded an opportunity to exercise an option to file a remittitur (should same be deemed advisable), and another trial be avoided.

What is now Rule 440, but was then Art. 1029a, was first construed by the Supreme Court, we believe, in Texas & N. O. R. Co. v. Syfan, 91 Tex. 562, 44 S.W. 1064, 1066. The Supreme Court there ruled that before said statute was enacted, the rule of practice in our Supreme Court had been that in actions for damages where the measure is not fixed by law, when a verdict was found to be excessive, the plaintiff could not be allowed to renounce the excess by remittitur, and avoid a new trial, but the judgment must be set aside and a new trial awarded. The Court there held that the statute abrogated the former decisions by it at least so far as concerned Courts of Civil Appeals. In said case the Court said: "It was the right of the railroad company (defendant in the case), to have the court of civil appeals determine whether or not the verdict of the jury was excessive in amount, but, to determine that question the court must first arrive at a conclusion as to what sum would be held to be reasonable if it had been assessed by the jury, before it could be determined that the verdict was excessive in amount." This holding was followed in Wilson v. Freeman, Receiver, 108 Tex. 121, 185 S.W. 993, Ann.Cas.1918D, 1203, where the statute was declared to be man-

datory. In the last-mentioned case it was declared that the difficulty of ascertaining the amount of the excess would not relieve the Court from exercising such function for this difficulty lies in most cases of excessive verdicts. That all the Court of Civil Appeals can do, and all that is required of it to do, by said statute, is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess.

In our original opinion we held that the opinion-evidence, to the effect that the actual value of the old bridge at the time it was injured was the same sum as the cost of the new bridge, was clearly mistaken, and could not be allowed to support the verdict finding that such actual value of the old bridge at such time was $7,550. We did not hold that there was no evidence that the old bridge did not have actual value at the time it was injured, or that there was no evidence from which the actual value could have been assessed. Indeed, we held that the court did not abuse his discretion in admitting in evidence, as a circumstance to be considered by the jury in arriving at the actual value of the old bridge when injured, the cost of the new bridge.

It is true that the evidence introduced by plaintiff did not form a basis for calculating such value to a mathematical nicety. The original cost of the old bridge in 1909-1910 was $2,890, and when completed it had a life expectancy of forty years. But it does not necessarily follow that, when it was injured in 1943, there then remained only the unexpired term of the forty years' expectancy which it had when completed. Also, it is well known that labor and material costs have greatly increased since the time the old bridge was originally completed. Considering all the factors and circumstances that were in evidence (except, of course, the cost of the temporary bridge), we would not have considered a verdict for damages in the net sum of $2,825 as being so excessive as to require reversal. By the expression "net sum" we mean the sum after plaintiff is charged with the junk value of the old bridge in the sum of $375. Since we have reversed and rendered the judgment insofar as $150 was allowed as being the cost of the temporary bridge, said sum should not have been incorporated in the judgment. Eliminating said non-recover-

able item, and deducting the sum of $375 from $7,550, leaves the judgment for damages which the court would have rendered upon the jury's verdict (except for erroneously including said $150) as being $7,175. Accordingly we ascertain that the verdict was excessive in the sum of $7,175 less $2,825, or $4,350, and plaintiff is privileged to file among the papers in this cause, on or before February 20, 1946, a remittitur of such excess of $4,350 and the judgment of the trial court will be reformed so as to be for the principal sum of $2,825, and as so reformed it will be affirmed, otherwise the judgment will be reversed and remanded.

Plaintiff's motion for rehearing will be granted upon the indicated terms; otherwise the motion will be refused.

Granted if remittitur is filed.