## UNITED STATES v. STATE ROAD DEPARTMENT OF FLORIDA et al.

### No. 13213.

United States Court of Appeals
Fifth Circuit.

May 30, 1951.

Rehearing Denied July 26, 1951.

Holmes, Circuit Judge, dissented.

592

Cody Fowler, William A. Gillen, Tampa, Fla., George Earl Hoffman, U. S. Atty., Pensacola, Fla., for appellant.

John W. McWhirter, Atty. State Rd. Dept. of Fla., Tampa, Fla., T. Paine Kelly, Asst. Atty. Gen., Tallahassee, Fla., J. McHenry Jones, Pensacola, Fla., for appellees.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

This suit, in the trial court was brought under the Federal Tort Claims Act [1] by the State Road Department of the State of Florida against the United States of America to recover damages resulting from the partial destruction of, and damage to, the Thomas A. Jefferson Bridge across Pensacola Bay, Escambia County, Florida, caused when the bridge was struck by four liberty ships of the government during a severe rain and wind squall in Pensacola Harbor, where the ships were anchored.

In its answer the United States denied its negligence, and asserted separate defenses. The eleventh defense denied the right of the plaintiff to recover in any event the cost of constructing and removing two wooden temporary detour bridges at and around the damaged and destroyed portions of the bridge, constructed for the purpose of opening the bridge to traffic while the bridge was being repaired. Following the receipt of answer to interrogatories propounded by the defendant by which it was shown that the Road Department had carried a policy of insurance upon the bridge and had been partially reimbursed by the Aetna Insurance Company of Hartford, Connecticut, the United States by its twelfth defense denied the right of the Road Department to maintain

1. 28 U.S.C.A. § 921 et seq. [1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 2671 et seq.].

the suit and further asserted that the insurance carrier became subrogated to any claim of the Road Department to the extent of the sum of $215,000.00 paid as insurance; that suit for this sum must be brought by the insurance carrier as subrogee in its own name as the real party in interest, and that the insured and paid Road Department was not entitled to sue for this sum. The defendant also set up additional defenses which in the present posture of the case it is not necessary to relate.[2] Upon the plaintiff's motion the Court struck the eleventh and twelfth defense. Thereafter the United States, alleging the existence and payment of insurance as set forth in the twelfth defense and asserting the right of subrogation of the insurance carrier and its right to participate in any recovery from the defendant to the extent of the payment made, and that the Road Department and the insurance carrier "are the real parties in interest in this suit," and under the law of Florida "are authorized jointly to sue the defendant to recover for the alleged damage to the bridge," moved that the insurer be made a party plaintiff to the suit. In answer to the motion plaintiff asserted that the right of the insurance carrier to be reimbursed out of any recovery of damages was a question only between the plaintiff and its insurance carrier which would be adjusted between the parties after the judgment, if any was recovered, and that the right of recovery of the entire damage vested in the plaintiff and therefore the insurance carrier was not an indispensable party plaintiff, nor the real party in interest. It was prayed that if any order be entered making the insurance carrier a party plaintiff that the joinder be required "solely in order that all parties for whose benefit the action is being prosecuted by the State Road Department shall appear of record as parties to the cause." The Court, reciting the existence of the right of subrogation on the part of the insurance carrier and that its joinder would in no way prejudice either the plaintiff or insurance carrier, directed that the insurance carrier should join as a party plaintiff "so that all parties for whose benefit the action is being prosecuted shall appear of record as parties in this cause." The insurance carrier thereafter filed a formal joinder expressly pursuant to the order of the Court and adopted the pleadings of the plaintiff. Thereafter the defendant filed answer and defenses to the same effect as theretofore filed to the complaint and asserted the additional defense that the claim of the subrogee was barred because it had not instituted or joined in the suit within one year after August 2, 1946 as required by the provisions of the Federal Tort Claims Act.[3]

The trial of the case was had before the late United States Circuit Judge Curtis L. Waller of this Court, sitting by designation as United States District Judge. The facts and circumstances of the case were fully developed as is shown by consideration of the lengthy transcript of record now before us. His Honor, Judge Waller, entered detailed findings of fact and conclusions of law adjudging the defendant negligent and overruling its defenses of inevitable accident and "Act of God" and awarded the plaintiff judgment in the amounts of damages stipulated to be proper if recovery for the items claimed was allowed. These findings and conclusions are published in State Road Department of Florida v. United States, D.C., 85 F.Supp. 489. The judgment was for the cost of repairing the permanent bridge $233,211.19, and for the cost of constructing and removing the temporary detour bridges $128,426.39. The total judgment awarded the Road Department of the State of Florida damages in the amount of $361,637.58. It was further ordered and adjudged that the co-plaintiff insurance carrier was entitled, as subrogee, to receive from the said State Road Department the sum of $215,000.00 out of the proceeds of the judgment. Pro-

---

2. A statement of these as well as a more full statement of the eleventh and twelfth defenses herein referred to may be found in State Road Department of

State of Florida v. United States, D.C., 78 F.Supp. 278.

3. 28 U.S.C.A. § 942 [1948 Revised Judicial Code, 28 U.S.C.A. § 2401].

vision for the payment of attorneys' fees was also made.

By this appeal three specifications of error are presented by the United States. It is contended first, that the trial court erroneously imposed upon the masters and other officers in charge of the vessels involved prior to and during the squall in which the vessels dragged anchor and collided with the bridge a standard of exercising a very high or extra-ordinary degree of care; second, that Aetna's claim as a plaintiff was barred by the limitation of the Federal Tort Claims Act, supra, and, third, that the cost of constructing and removing the two temporary detour wooden bridges was not an element of damage recoverable by the Road Department. We have intentionally refrained from repeating in detail the findings of fact and conclusions of law reached by the learned Judge sitting as U. S. District Judge designate. They fully appear in the published report appearing in 85 F.Supp. 489. Reference thereto will afford full understanding of all material facts and circumstances of the case and conclusions of law announced. These we approve in substance.

█ The first specification of error of the appellant assumes, we think, the application by the trial judge of a standard of care which is not supported when the findings of fact and conclusions of law are considered as a whole. The specification is predicated upon isolated statements appearing in the Court's discussion.[4] We are convinced from a consideration of the opinion of the Court as a whole that the judgment against the defendant-appellant resulted from no misapplication of law to the facts found by the Court. While some language of the Court may be such as to give grounds for argument upon appeal, we think that consideration of the determination of the Court as a whole demonstrates that such argument is not valid and should be rejected.

█ It appears from the record that the defense that the claim of the subrogee was barred by the limitations in the Federal Tort Claims Act, supra, had been determined upon motion prior to the trial. It is to the effect of this ruling that the second specification of error is directed. In brief, the contention is that since there were two "real parties in interest" and only one of them filed a timely suit the other is barred. Thus to support its position it was necessary for the appellant to bring into the litigation the additional "real party in interest" and assign to it an independent claim in order to invoke the bar of the Federal Tort Claims Act. Since the Road Department had not been fully reimbursed for its damages even to the main bridge structure, it was in any event entitled to assert a claim and in fact had done so,— prosecuting suit for the full amount. In these circumstances the question could in no event be broader than one of proper parties. The claim had been timely asserted. Determination of whether other additional parties were entitled or indeed required to join in the suit was a matter distinct from the question of whether an action by one party, likewise entitled to sue, had been begun within the permitted time. In the present case there was only one foundation claim. That was for the damage to the bridge. This was the cause of action. The defendant had the right to bring in the subrogee as an additional party,[5] but when brought in the subrogee had an equitable right to reimbursement, which could be enforced only by establishing the same claim, or cause of action, of the Road Department. This had been timely filed, and was a sufficient and time-

---

4. "If the masters of these vessels were merely required to exercise ordinary or reasonable care after the officers of the vessels discovered their peril, then the defendant would doubtless be entitled to a judgment in its favor."

"Ordinary care or reasonable care was not the test, but a very high degree of care and caution was required under the circumstances present at the time."

The holding, "that the defendant had the burden of showing himself to be free from the commission or omission of any act that proximately contributed to the injury and if it has failed so to do the defenses of inevitable accident and *vis major* must fall."

5. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L. Ed. 171.

ly assertion of the claim for the entire damages.[6] It is therefore clear that the fact that the subrogee was entitled to participate in the proceeds of the judgment when recovered furnishes no valid ground for adjudging this amount of the total recovery barred by the provisions of the statute.

That portion of the complaint which sought recovery of the cost of constructing and removing the temporary wooden bridges around those portions of the permanent bridge that was damaged by the defendant is predicated upon the obligation of the defendant State Road Department under a lease-purchase agreement which required the plaintiff to maintain and keep the bridge open at all times,[7] and obligated it to operate the bridge free of tolls as a part of the State Road system.[8] There appears no dispute that the bridge in question is a State road and also a designated and numbered U. S. Highway, No. 98. The Road Department relies upon cited statutes of Florida[9] as well as common law right to recover such damages through its designated agency. The appellant contends that in no event is this item of damage recoverable since if done by the State in its general governmental function to maintain the roads the expense is attributed in contemplation of law to the performance of that duty and not to any other circumstances,[10] and further, that if the obligation be deemed to arise from the lease contract the damages are unrecoverable because too remote. It is also contended that since the statute limits recovery to only "the actual damage to the highway" it does not authorize the recovery of the damages here involved. It is conceded that the detour bridges were built to keep traffic open over the State and Federal highway, of which the damaged bridge was a part. The trial judge in sustaining the motion to strike this defense was of the opinion that a failure to consider the cost of constructing the temporary bridges as a necessary part of the over-all construction costs of the repairs of the permanent bridge would "be to blindly ignore the importance of present day use of arterial highways." We are impelled to the same view. Under the circumstances here present, where a permanent bridge, which the State has the obligation to maintain and keep open to accommodate a heavy flow of traffic, is damaged, the cost of constructing temporary facilities essential to maintain

6.  Cf. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 67, 53 S.Ct. 278, 77 L.Ed. 619.

7.  "The Department will at all times during the continuance of this agreement, maintain the bridge and approaches in good repair and in sound operating condition, and will make all necessary repairs, renewals and replacements.

    "The State Road Department shall maintain the roads and protect and preserve the same from trespass and injury * * * as is or will be liable to endanger the comfort and safety of the public travelling on said roads. Said Department shall make and maintain said roads safe for the use of sober, lawabiding citizens who desire to travel over same."

8.  "The Department will at all times during the continuance of this agreement operate the said bridge free of tolls as a part of the State Road system."

9.  Florida Statutes Annotated 1941 § 341.24 provides: "The state road department shall maintain the state roads and protect and preserve the same from trespass and injury and prevent such use of, and traffic on, said roads as is or will be liable to injure or destroy the same, and is or will be liable to endanger the comfort and safety of public travel on said roads. Said department shall make and maintain said roads safe for the use of sober, law-abiding citizens who desire to travel over the same.

    "Any person shall be civilly liable to the department for the actual damage to the highway by reason of his wrongful act, which damage may be recovered by suit, and when collected shall be paid into the state treasury to the credit of the state road tax fund."

    Section 320.54(6), provides: "Civil liability. Whoever damages any state road by any trespass on, unlawful use of, or traffic over such road shall be civilly liable for the amount of such damage, which amount may be recovered at the suit of the state road department, and when recovered shall be turned into the state treasury and placed to the credit of the state road tax fund."

10. Citing as illustrative, The Manhattan, D.C., 10 F.Supp. 45, affirmed 3 Cir., 85 F.2d 427.

the regular flow of traffic is so directly related to the injury to the bridge and such a well understood and necessary consequence of such injury that such expense should be deemed legally a part of the damages sustained by the injury to the permanent bridge. So closely related are the repairs to the permanent bridge and the necessity for maintaining the traffic artery which it affords that we think the expense here in question constitutes "actual damage to the highway" within the fair intent and meaning of the Florida statute. Actual damages are compensatory damages. Expenses which naturally and reasonably follow from an injury to property are proper items of recovery.[11] In recognition of this, Florida Courts permit recovery of the use value of automobiles while waiting repair,[12] and the right to recover the rental expense for an automobile necessary to replace one negligently damaged is well recognized.[13]

■ We have considered the authorities cited by the appellant, that the proper measure of damages for injury to a non-toll bridge is the cost of repairing and restoring it,[14] as well as adjudications that the cost of maintaining a detour is not a proper item of recoverable damage for injury to a bridge.[15] There can be no quarrel with the text authorities to the effect that the cost of repairing or restoring the bridge is generally the proper measure of damages for injury to it. However this does not reach the precise question here. The cases cited were determined upon consideration of statutes which restricted recoverable damages to such as "resulted to such bridge" or damages which the "bridge may sustain" and the Courts expressly construed the statutes there involved as not authorizing the recovery of consequential damages.

The Florida statute provides for recovery of actual damage to the highway. "Highway" is a broader term than "bridge" or "structure." We have found no Florida decision which construes the Florida statute to exclude the recovery of consequential damages. It is our independent opinion that a fair and reasonable construction of the statute furnishes a basis for the recovery now involved since the damages claimed are the natural and reasonable consequence of the injury to the bridge, the highway.

None of the specifications of error or the arguments in support thereof show reversible error and the judgment of the trial court is

Affirmed.

HOLMES, Circuit Judge (dissenting).

The agents of the government in charge of the ships that damaged the bridge, I think, were held to too high a degree of care. The officers and men, in the performance of their respective duties upon these ships, were required to exercise only the care and skill that ordinarily prudent and competent seamen, in similar circumstances, would have exercised for the protection of their own property. The court below held that they did this, but thought a higher standard of skill and care was required of them. This court is reversing the trial judge's opinion as to the law of the case, but not correcting the harm that resulted from the application to the facts of an erroneous legal principle. The misapplication of the principle resulted in a judgment for the plaintiffs below when otherwise, the court said, judgment should have been for the defendant. To say that this was a harmless error is not in accord with my view of the situation, when appli-

11. Atchison, T. & S. F. Ry. Co. v. Jarboe Livestock Comm. Co., 10 Cir., 159 F.2d 527, 530; 25 C.J.S., Damages, § 25; 15 Am.Jur. Damages Section 66.

12. Allen v. Hooper, 126 Fla. 458, 171 So. 513.

13. Maggio v. M. F. Bradford Motor Express, Inc., La.App., 171 So. 859.

14. 8 Am.Jur. (Bridges), Sec. 84, p. 973; 11 C.J.S., Bridges, § 100, p. 1137; 9 C. J., Bridges, Sec. 118, p. 499.

15. State Highway Commission v. American Mutual Liberty Insurance Co., 146 Kan. 187, 70 P.2d 20; Shell Oil Co. v. Jackson County, Tex.Civ.App., 193 S. W.2d 268; State v. F. W. Fitch Co., 236 Iowa 208, 17 N.W.2d 380.

cation of the correct principle would have brought about a wholly different judgment. An error that changes the result of a lawsuit involving hundreds of thousands of dollars is not harmless to the losing litigant, and should be corrected on appeal.

Rehearing denied; HOLMES, Circuit Judge, dissenting.

HOLMES, Circuit Judge (dissenting).

For the reasons stated in my dissent and others urged by appellant, I think the petition for rehearing should be granted.